### HORWITZ v. JEFFERSON COUNTY TRACTION CO. (No. 113.)*

(Court of Civil Appeals of Texas. Beaumont. April 10, 1916. Rehearing Denied July 3, 1916.)

1. CARRIERS ☞238—CARRIAGE OF PASSENGERS—WHO ARE PASSENGERS.

Where plaintiff got on the steps of a moving street car at a point where it never stopped and was knocked off by a post before the conductor could open the door to let him in, *held* that he was not a passenger.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 973; Dec. Dig. ☞238.]

2. NEGLIGENCE ☞83—CONTRIBUTORY NEGLIGENCE—LAST CLEAR CHANCE.

Under the doctrine of discovered peril, plaintiff must show that he was in a perilous position, that defendant discovered it in time to avert the accident, and had no reason to believe that plaintiff could or would free himself from the impending injury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 115; Dec. Dig. ☞83.]

3. CARRIERS ☞318(4) — OPERATION — SUFFICIENCY OF EVIDENCE—LAST CLEAR CHANCE.

Evidence *held* insufficient to show that defendant street railway company discovered plaintiff's dangerous position on the car steps in time to avert his being knocked off by a post.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1307, 1308; Dec. Dig. ☞318(4).]

4. EVIDENCE ☞591—WEIGHT—CONCLUSIVENESS ON PARTY INTRODUCING IT.

Where plaintiff introduced the conductor's report of the accident made to defendant street railway company, he was bound by such report.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2440–2443; Dec. Dig. ☞591.]

Appeal from District Court, Jefferson County; E. A. McDowell, Judge.

Action by W. M. Horwitz against the Jefferson County Traction Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Crook, Lord, Lawhon & Ney, of Beaumont, for appellant. Hightower, Orgain & Butler, of Beaumont, for appellee.

MIDDLEBROOK, J. Appellant sued the appellee for damages for personal injuries, alleging negligence of the defendant as the proximate cause of his injury. Appellee is a corporation, and operates a line of electric railway between Beaumont and Port Arthur, and is a common carrier of passengers for hire. Defendant answered by general demurrer, general denial, and plea of contributory negligence on the part of plaintiff.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.

There is no question but that the appellant was seriously injured. He received his injury in Port Arthur May 3, 1914, when he attempted to get on the car coming from Port Arthur to Beaumont, about 11 o'clock a. m. The case was tried before a jury; but the trial court instructed a verdict peremptorily for the defendant. The case is before this court on two issues; i. e., discovered peril, and that defendant owed plaintiff that degree of care and protection incident to a passenger on its cars.

Pertinent to these issues, the facts, briefly stated, are substantially as follows: Appellant was a merchant at Port Arthur. His wife was in Beaumont at the time, and had written him to come to Beaumont for dinner that day. Appellant was attempting to comply with this request when he got on the steps of the car and held on by two handholds on the side of the car, one on each side of the door. It was about 11 o'clock a. m., and this was the last car he could take from Port Arthur and reach Beaumont for the dinner hour. He did not have a ticket, but he had the money to pay his fare, and it was common for fares to be paid after boarding the car, appellant himself having so paid his fare many times. The cars run between these points on the hour, leaving Port Arthur and arriving at Beaumont one hour later, and vice versa. Appellant saw the car leaving Port Arthur for Beaumont, and intercepted it at a place where passengers were not taken on or discharged; but when about 35 or 40 feet distant from the car, in the street along which the car line is constructed, he gave the motorman a stop signal, and he thought the motorman caught his signal, and would stop the car, and he testified that the motorman did slow down. The motorman, however, did not get the signal, and knew nothing of appellant's presence until after the accident. In the city of Port Arthur the streets are paved, and this line of railroad goes in upon one of its principal streets, and is double-tracked at the place the accident occurred, and iron posts supporting the electric wire are between the two tracks, and about 8 to 10 inches from the side of the cars on the left of the cars going and coming. Plaintiff attempted to board the car on the left side, at a point on the railroad where passengers were not received, while the car was running about 10 miles per hour, according to his testimony, just after the car had entered that part of the city where the tracks are double. The car doors open and close upon the inside, and are even with the general outside contour of the car. The steps extend and are uncovered, so that one may catch the handholds and swing onto the car with the door closed. Plaintiff knew that the place he attempted to board the car was not a place on the railroad where they regularly received and discharged passengers, and he knew, also, that the right-hand side of the car was the place on the car to enter same. Plaintiff was a resident of Port Arthur at the time the electric railroad was built from Beaumont to Port Arthur. He was versant with the manner of its construction, and knew that the posts supporting the trolley wires were between the two tracks, but he did not know just how close these posts were to the side of the cars when they were passing the posts. As he was situated, his only chance to board the car was on the left side. The motorman was on the front of the car, and the conductor was on the rear of the car. When appellant caught on the steps of the rear end of the car on the left-hand side, he knocked on the glass door to attract the attention of the conductor, and asked him to let him in. He testified that the conductor looked him square in the face, and that their faces were only 8 or 10 inches apart. The conductor testified that he heard some one pounding on the door on the off side and turned and saw the appellant, and motioned to him to look out for the post, and before he could open the door they passed the post, and appellant was knocked off by coming in contact with the post.

Plaintiff introduced in evidence the written statement of the conductor to the company, which was made the day the accident occurred, which is as follows:

"Was on Motor Four, going north on Proctor street; car had got about end of the double track; heard some one knock on door on off side of car; looked around; saw a man standing on the steps. I motioned to him to look out for the trolley wire pole. Before I could get my door open, passed the first post; knocked the man off the steps."

The car was equipped with a double system of air brakes, which were in good order. Emergency air-brake signal was given by the conductor after the plaintiff had been knocked from the steps, and emergency air brakes were applied by the motorman, and the car was stopped at a distance of 50 to 60 feet. The car was about 52 feet long. The motorman testified that they were running about 10 or 12 miles per hour at the time of the accident, and that it required 50 to 60 feet to stop the car under emergency brakes, when running at this speed. Two or three witnesses testified that they thought the car could be stopped, when running at a speed of 10 or 12 miles per hour in a distance of 10 or 12 feet, but none of these witnesses had ever run such a car as this one; one of them had run a street car. They testified, also, that they had seen cars on this railroad stopped in 10 or 12 feet when running 10 or 12 miles per hour.

It is clear that if the plaintiff recovers, he must do so on one of two counts, or on both; i. e., that he was a passenger on the car, and therefore the company owed him that high degree of care it is due to exercise for a passenger, or that he was in a po-

sition of peril known to the company's operatives in time for them to have used the means at hand to prevent his injury without injury to the car and to the passengers on the car, and that, having such knowledge, the operatives had no reason to believe that he did not know his perilous position, and could not or would not free himself from same before the danger point was reached.

[1] First. Was the plaintiff a passenger, as that term has been used and defined by the courts? He says himself that he was on the wrong side of the car; that he was not on the side of the car at which passengers were received, and he knew this when he got on the car. We shall not be first to announce the doctrine, but it has become universally known that electrically propelled cars, while in the limits of a city, receive passengers only on the right-hand side in the direction in which they are traveling, so that it is a matter of time only until courts will take judicial knowledge that it would be negligence upon the part of a prospective passenger to attempt to board the car from the left-hand side, even on a single track, while in such city. One not acquainted with the custom might have cause to contend otherwise; but one in possession of the rule as promulgated by the company, and the custom, and who testified that he knew the left-hand side was not the side at which passengers were admitted, and regardless of this rule, and regardless of the fact that he was boarding the car at a place where the tracks were doubled, and in a city where he knew the rule had been established to board the car only from the right-hand side, to claim that he was a passenger on the car, under the facts of this case, is beyond our imagination. In this view we are not unmindful of the case of M., K. & T. v. Williams, 40 S. W. 352, cited by appellant, in which a prospective passenger had gotten upon the front end of the express car in his hurry to board the train, and the operatives turned a hot-water hose on him, and injured and made him leave the train. In that case, the intending passenger had already boarded the moving train, and was occupying a place of safety, and the operatives scalded him off the moving train and caused his injury. The law would not uphold such action, even if he had been an intentional trespasser, and attempting to steal the ride. This doctrine is announced by Justice Key in his opinion in that case, in these words:

"If Eaton Williams did not intend to pay his fare, he was a trespasser; and if the fireman, while using the hose for the purpose for which it was put on the engine, negligently or willfully so used it as to throw the water on Eaton Williams, then, in our opinion, he was acting within the scope of his employment, and appellant would be liable."

Upon the doctrine thus announced, it is clear that Justice Key intended to convey the idea that, Williams having once secured a place of safety, and by the willful, overt act of defendant's employés having been forced from that position, by the active negligence of defendant's employés, the defendant was therefore liable for such injuries as were caused him by such acts of its operatives. As we understand Justice Key's opinion, it does not deal with the proposition of one intending to become a passenger, not having secured a place of safety, but the potent thought of the opinion is that, the injured party having secured a place of safety, it was the duty of the railroad company to use ordinary care to prevent his injury, and that active negligence on the part of defendant's operatives was inexcusable, and therefore he was entitled to recover for the injuries caused by such active negligence. Under the facts of that case and of the instant case, there is a very broad distinction. In the instant case, the proposed passenger had not secured a place of safety; no overt act of active negligence of the operatives of the car is shown, and from the statement of the conductor, on the contrary, the operatives were doing all in their power to take care of the individual, rather than, as was the fact in the Williams Case, to do the very thing that caused his injury. In the instant case, appellant had not reached a place of safety, nor had he secured a place where passengers were permitted to ride, all of which he knew. We hold, therefore, that appellant was not a passenger at the time he was injured, under the facts of this case, and, in our judgment, to hold otherwise would be to hold that such companies could not inaugurate rules for the safety of passengers boarding their cars, and, when inaugurated for such purpose, a prospective passenger, who knew of the beneficent regulations, could disregard them, and upon receiving injury incident to his own negligence and disregard of such regulations, recover damages against the company for his own, known negligence. In the above-quoted case, Railway Co. v. Williams, passed upon by the Supreme Court, Justice Brown writing the opinion, in 91 Tex. 255, 42 S. W. 855, specifically decides that issue under the facts of this case, when he says:

"But in order to raise such an implied contract, the party desiring to be carried by the railroad company must take passage on that part of the train provided by it for carrying passengers" (citing Merrill v. Railway, 139 Mass. 238, 1 N. E. 548, 52 Am. Rep. 705; Hutch. on Carriers, 447, 448, § 554; Snyder v. Railway, 42 La. Ann. 302, 7 South. 582.)

In the same opinion, Justice Brown says further:

"Notwithstanding the [conductor] permits the payments of fares upon the train we think it a reasonable regulation for the company to make that it should establish places at which to receive its passengers and designate coaches for them to ride in. It is proper that the carrier should be notified of the presence of all persons claiming the protection of passengers; otherwise it will be unable to distinguish between

such persons and those who might be trespassers where in portions of trains not used for the carriage of passengers. By this rule the rights of a carrier and a passenger would be alike guarded, while, on the other hand, if the person seeking passage on the train were permitted to board any part of the train as expressed in their instruction the carrier would be placed under the highest obligation to one it did not know it sustained the relationship of carrier to passenger."

In the case of Dallas Rapid Transit Co. v. Payne, 98 Tex. 211, 82 S. W. 649, Justice Brown, writing the opinion, specifically decides, we think, that, under the facts of this case, one in the position that the plaintiff was in when he was injured was not a passenger upon the car.

[2] Second. Can the appellant recover under the law of discovered peril?

To do so, he must show by a preponderance of the evidence: (1) That he was in a perilous position; (2) that the operatives had discovered his perilous position; (3) that the operatives had discovered it in time to have prevented the injury, with the means at hand, with safety to the passengers on the car, and the car as well; (4) the operatives, after discovering his peril, had no reason to believe that he could or would free himself from the impending injury.

There is no question but that the plaintiff was in a perilous position, nor is there any question that the perilous position of the plaintiff was discovered by the conductor before the injury occurred. The conductor's statement so showed. So, the plaintiff meets the first and second requisites. But, under the facts of this case, can it be said that his perilous position was discovered by the conductor in time to prevent his injury, and did the conductor, after he discovered his perilous position, have reason to believe that he would not free himself from his perilous position before the point of injury or danger was reached?

[3, 4] As to the third proposition, we think the facts of the case unmistakably show that the conductor did not discover his perilous position in time to avoid the injury of appellant, in accordance with the testimony introduced by the plaintiff himself. It is likely that no truer statement of the conditions under which the plaintiff was injured could be presented than that introduced by the plaintiff in the form of the conductor's report of the accident on the day it occurred, and in that report he stated that he could not open the door in time to prevent the injury.

As to the further element of discovered peril, as stated above, can it be said that the conductor had no reason to believe that the plaintiff would free himself from the impending danger? Plaintiff had gotten on the moving car. He says in his own testimony that it was moving about 10 miles per hour when he boarded it. The testimony shows that it was moving about this speed when the injury occurred, and when the car was stopped, after the injury. Certainly, if the appellant could get on the moving train when it was moving at a speed of about 10 miles an hour, he could have stepped off of it when it was moving approximately at the same speed, and it occurs to us that the conductor, even though he had made no effort to open the door, when he motioned to the appellant to look out for the trolley wire post, would be warranted in presuming that the appellant would step off of the moving car, and thereby free himself from the impending danger. The report of the conductor, copied herein, which was introduced by the plaintiff, emphatically disputes that his position was discovered by the defendant in time to have prevented the injury; and, not taking into account the other evidence tending to support this statement by the conductor, which was made to the company, the same day the injury occurred, we think the plaintiff is bound by the evidence he introduced, and, such being the case, there is but one conclusion deducible from the evidence, and that is that plaintiff's perilous position was not discovered by the defendant's operatives in time to have prevented his injury, even without consideration of the safety of those on the car, and the car. The instant case is unlike the case of Railway Co. v. Brock, 35 Tex. Civ. App. 155, 80 S. W. 424. In that case the engineer testified that he did not see Brock on the bridge until he was in about 100 feet of him. The Supreme Court says:

"There is no direct evidence contradicting the engineer upon this subject, but there are some facts and circumstances which have a tendency to show that he did see Brock in time to have stopped his train."

In the instant case, there is no question raised whatever as to the time appellant got upon the steps of the car and assumed the perilous position and the time of his discovery by the conductor. Appellant says that he got upon the steps and began pounding upon the door, and attracted the attention of the conductor, and that the conductor's face was within 6 or 8 inches of his face. The conductor says that he heard some one pounding upon the door on the off side of the car, and turned and saw a man standing there, and immediately motioned to him to look out for the trolley wire post, and attempted to open the door and let him in, but before he could do so, they reached the trolley post, and appellant was knocked from the car; and appellant introduced this very testimony in evidence himself, and, under the authorities, we think he is bound by such testimony. Texas & Pacific Ry. Co. v. Gay, 88 Tex. 114, 30 S. W. 544, and authorities therein cited. Our Supreme Court, in Ft. Worth & Denver City Ry. Co. v. Shetter, 94 Tex. 199, 59 S. W. 533, H. & T. C. Ry. Co. v. O'Donnell, 99 Tex. 637, 92 S. W. 409, and S. A. & A. P. Ry. Co. v. McMillan, 100 Tex. 562, 102 S. W. 103, and San Antonio Trac. Co. v.

Kelleher, 48 Tex. Civ. App. 421, 107 S. W. 64, except the last mentioned, which is an appellate court decision, has tersely stated the rule of recovery upon discovered peril, and, we think, unmistakably, against appellant's contention in this case. For other authorities pertinent to the issues of this case, see Railway Co. v. Finn, 107 S. W. 100; Railway Co. v. Jones, 103 Tex. 187, 125 S. W. 309; Mo. Pac. Ry. Co. v. Porter, 73 Tex. 307, 11 S. W. 324.

Under the pleadings and facts of this case, we do not believe that a judgment against the defendant could have been permitted to stand by a trial court; in short, it occurs to us that it is a case in which the plaintiff's own ruthless actions were the sole cause of his injuries, and that, after discovery of his peril by the operatives of the car, they were wholly unable to prevent his injuries, and therefore the defendant is not liable, and the trial court did not err in instructing a verdict for the appellee.

The judgment of the trial court is therefore affirmed.