ARLAS PEVETO ET AL, V. MRS. IVA SMITH.

No. 7400. Decided November 29, 1939.
Rehearing overruled January 31, 1940.
(133 S. W., 2d Series, 572.)

*W. O. Bowers, Jr.,* of Beaumont, for plaintiff in error.

The burden of proof is upon plaintiff upon the issue of negligence to show the facts surrounding and leading up to the accident, and if from these the jury may reasonably infer that negligence in defendant contributed to the injury and the exercise of due care by plaintiff, then plaintiff would be entitled to a verdict. Texas & Pac. Ry. Co. v. Shoemaker, 98 Texas 451, 84 S. W. 1049; Davis v. Castile, 256 S. W. 870; Texas & N. O. Ry. Co. v. Crowder, 63 Texas 502.

*John H. Benckenstein* and *Jack M. Moore,* both of Beaumont, for defendants in error.

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

This suit was brought by the defendant in error, Mrs. Iva Smith, the mother of Olen Smith, to recover damages of the plaintiffs in error, Arlas Peveto and H. B. Jackson, for personal injuries sustained by Olen on April 22, 1936, which resulted in his death five days later. It was alleged by Mrs. Smith, in her petition, that Peveto and Jackson were partners, composing the firm of "Peveto Mercantile Company" and that the injuries sustained by Olen proximately resulted from the negligence of Peveto in operating a motor truck, in furtherance of the business of said firm, while he was under the influence of intoxicating liquor. The case was tried before a jury on special issues, and, upon their answers to same, the trial court rendered judgment in favor of Mrs. Smith against Peveto and Jackson for damages in the sum of $4500. From said judgment, Peveto and Jackson prosecuted an appeal to the Court of Civil Appeals at Beaumont, and that court affirmed the judgment of the

trial court. 113 S. W. (2d) 216. Peveto and Jackson applied for the writ of error and the application was granted.

In the plaintiff's petition the following allegations occur, among various others not presently material:

"That on or about April 22, 1936, at or about the hour of six thirty o'clock P. M., the said Charles Olen Smith, now deceased, left his work at Pennsylvania Shipyards, Inc., in Beaumont, Texas, and started to his home at Vidor in Orange County, Texas, and drove his car, a certain Dodge, 1927 Model Sedan, Texas License No. 647-369, on and over the United States Highway No. 90, which runs from Beaumont to Vidor, Texas, at or about said time was driving his car on and along said public highway and was driving same in a southeasterly direction over the viaduct and was approaching the bridge that crosses the Neches River, when suddenly and without previous notice his engine stopped running and he pulled over to the farthest edge of said viaduct on his right hand side. At said time and place it was not yet dark but, nevertheless, he turned his lights on and the lights on his said car, both front and rear, were burning. The said Charles Olen Smith got out of his car, raised the hood on the left hand side and began to inquire into the trouble of his engine and was examining the vacuum tank on his said car when suddenly, without any notice or warning of any kind whatsoever, the defendant, Arlas Peveto, driving a new Ford V8 PICKUP TRUCK, LICENSE No. 122-CM091, loaded with sacks of meal or some such commodity, drove said truck with great force and violence into the rear of said Dodge Sedan, and the said Charles Olen Smith was thrown against said Dodge Sedan and down on said highway and was brutally, severely and fatally injured, and suffered thereby the following injuries, which resulted in his death, towit: Fracture of upper jaw, loosening all the upper teeth, a wound on the roof of his mouth, punctured like, both eyes bruised and almost closed, a fracture of the lower jaw on the right side, which caused quite a deformity, injury to the right thigh near the right groin, and internal injuries of the abdomen, which likely ruptured some of the viscera, particularly the kidney and the intestines.

"In this connection, plaintiff says that defendant, Arlas Peveto, at said time and place further negligently drove, operated and managed said Ford V8 Truck in this:

"(2) That defendant, Arlas Peveto, at said time and place drove and operated said Ford V8 truck upon a public highway and road in this State while under the influence of intoxicating

liquor in violation of Article 802 of the Penal Code of this State, Acts 2nd C. S., 1923, page 56;
"* * *

"That by reason of such negligent, careless and incompetent and inexperienced management of said Ford V8 Truck by defendant, Arlas Peveto, and as a direct and proximate result therefrom, the said Ford V8 Truck struck, knocked, collided, ran into and against the rear of said Dodge Sedan with great violence, knocked, propelled, broke and damaged the same, and threw the said Charles Olsen Smith on and about the engine, windshield, and fenders of said Sedan and down and upon said highway whereby he received the injuries hereinabefore mentioned, which caused his death; and in this connection plaintiff further alleged that said collision, the injuries to the said Charles Olen Smith, which later caused his death, all herein fully alleged, each and all, were caused by the negligent acts on the part of defendant, Arlas Peveto, herein alleged, and that each and all of said acts of negligence hereinabove stated were direct and proximate causes of said collision, the injuries to the said Charles Olen Smith, which later caused his death."

Among the numerous special issues submitted to the jury by the trial court were the following:

"Special Issue No. 1.
"Do you find from a preponderance of the evidence that on or about April 22, 1936, defendant Arlas Peveto drove a new Ford V8 truck into Charles Olen Smith's Dodge Sedan?
"Answer 'he did' or 'he did not' as you find the facts to be."
The jury answered: "He did."

"Special Issue No. 2.
"Do you find from a preponderance of the evidence that Charles Olen Smith received injuries from such collision, if you have found that defendant, Arlas Peveto, did drive said Ford V8 truck into Charles Olen Smith's Dodge Sedan?
"Answer that 'he did' or 'he did not,' as you find the facts to be."
The jury answered: "He did."

"Special Issue No. 3.
"Do you find from a preponderance of the evidence that Charles Olen Smith died as a result of such injuries, if you have found that he received injuries in such collision, if any?
"Answer 'he did' or 'he did not,' as you find the facts to be."
The jury answered: "He did."

"Special Issue No. 4.

"Do you find from a preponderance of the evidence that at the time and place of the collision, if any, that defendant, Arlas Peveto, drove said Ford V8 truck while under the influence of intoxicating liquor?

"Answer 'he did' or 'he did not,' as you find the facts to be."

The jury answered: "He did."

"Special Issue No. 5.

"Do you find from a preponderance of the evidence that defendant, Arlas Peveto's act of driving said truck at said time and place while under the influence of intoxicating liquor, if you have so found, was negligence as that term has been defined for you?

"Answer 'yes' or 'no' as you find the facts to be.

The jury answered: "Yes."

"Special Issue No. 6.

"Do you find that such negligence, if you have found that it was negligence, was a proximate cause of the injuries received by Charles Olen Smith, if any?

"Answer 'yes' or 'no' as you find the facts to be."

The jury answered "Yes."

"Special Issue No. 7.

"Do you find from a preponderance of the evidence that the injuries received by Charles Olen Smith on the occasion in question were not the result of an unavoidable accident as that term is herein defined?

"You are instructed to answer 'it was an unavoidable accident or 'it was not an unavoidable accident' as you find the facts to be."

The jury answered: "It was not an unavoidable accident."

The first ground of complaint which we shall consider is to the effect that the evidence is insufficient to raise the fact issue submitted to the jury in Special Issue No. 6. That is to say, that there is no evidence to show that the negligence of Peveto, in driving his truck at said time and place while under the influence of intoxicating liquor, as found by the jury, was the proximate cause of the injuries received by Olen Smith. The testimony bearing on this question is substantially as follows:

The public road from the City of Beaumont to the small town of Vidor runs in a southeasterly direction to Vidor and on farther to the City of Orange. In the eastern edge of Beaumont the road crosses the Neches river over a long viaduct. Louisiana street, in Beaumont, runs in the same direction as

said public road and terminates at the corporate boundary of the city which crosses the viaduct some 200 or 300 feet from the western end thereof. The way across the viaduct is about 16 or 18 feet wide. At the trial of the case, it was stipulated by the parties that Everett Smith, who was absent, would, if present, testify to the following facts, and such stipulation was introduced in testimony, towit: In the evening of April 22, 1936, Everett and Olen left Beaumont, in Olen's Dodge Sedan, to go to Vidor. As they were driving along on the viaduct, just outside the city limits of Beaumont, the car ran out of gasoline and the car stopped on the right-hand side of the viaduct. The vacuum tank of the car was found to be dry. They left the car parked on the viaduct and went back to the Shell Filling Station, which was situated at the western end of the viaduct. Olen stopped at the filling station and Everett went on into Beaumont and did not see Olen again until the next morning at the hospital.

J. W. Long testified, in substance: Along about 6 or 7 o'clock in the evening of April 22, 1936, Long drove across the viaduct, in his car, on his way to Vidor. He passed Olen's car which was parked on the right-hand side of the viaduct. As he was approaching the car, he saw it for a considerable distance and noticed that the tail light was burning. There was plenty of room for him to drive past the car on the left side thereof. As he passed it he saw Olen standing on the ground, beside the engine, with the hood raised. Olen appeared to be having some trouble with the vacuum tank of the car. He was standing by the vacuum tank "as though he were filling it."

Martin Richardson testified, in substance:

He, Richardson, went from Beaumont, in his car, to Vidor. On his way to Vidor he crossed over the viaduct late in the evening—about dusk—of April 22, 1936. He saw Olen Smith's car parked "against the railing on the right-hand side of the viaduct." A short time later, as he was returning from Vidor, he saw "somebody hit the car (Olen's) and there wasn't nobody there. The car was over on the same side of the road, knocked up on the side there, the left-hand side coming back." He, Richardson, did not stop.

Ralph Wilson testified, in substance: He, Wilson, drove across the viaduct, in his car, late in the evening of April 22, 1936, somewhere around six o'clock. He was on his way to the Boy Scout Camp which was located some distance out toward Vidor. As he got up on the viaduct he saw a car a con-

siderable distance ahead. The car was parked on the right-hand side of the viaduct close up against the right-hand railing. It was headed toward Vidor. As he was approaching where the car was parked he met two men, who were walking toward the western end of the viaduct. He passed the parked car and drove on to the Boy Scout Camp. Sometime later he recrossed the viaduct on his way back to Beaumont. As he was driving on the viaduct, he saw a considerable distance ahead of him, a car parked on the wront side of the viaduct—that is to say, on the right-hand side as Wilson was then traveling. The parked car was facing toward the witness and its headlights were burning. The parked car was the same one which he had seen parked on the other side as he was going out. He drove on up to and around the parked car. As he was driving around the car, he saw a man sitting crouched over on the floor of the viaduct about 12 or 15 feet behind the right hind wheel of the parked car. He drove a short distance, parked his car along the right side of the viaduct and went back to the man whom he had seen sitting on the floor of the viaduct. He found that the man was badly injured and was bleeding profusely. The man seemed to be conscious, as he said "Oh Lord, have mercy on me." About that time two other men appeared on the scene, and all three concluded that the thing to do was to take the injured man (who Wilson afterwards learned was Olen Smith) to an undertaking parlor whence he could be taken by an ambulance to the hospital. Wilson got into his own car, and while backing around to where Olen was, he "ran over a tin can, or dust pan or a piece of tin of some sort." With the aid of the other two men, Wilson lifted Olen into his, Wilson's, car, and Wilson drove to the undertaking parlor, where Olen was transferred to an ambulance which took him to the hospital. On leaving the undertaking parlor, Wilson drove to another place near by to have the blood washed out of his car. At this last mentioned place he looked at the clock and saw that it was 7:30 o'clock.

A. M. Patureau, Sr., a policeman, testified, in substance:

He, Patureau, was telephoned from headquarters to go out to the viaduct and remove a car that was parked there. He got there around about 9 o'clock that night. He found the car parked on the left-hand side of the viaduct, at an angle of about 20 or 25 degrees. The front end of the car was against the left-hand railing and the headlights were burning. The parked car was badly damaged at the rear end. Since the mission of the witness was to remove the car from the viaduct he made no investigation of the surrounding circumstances. He noticed, how-

ever, a large pool of blood on the floor of the viaduct over on the other side—near the middle line of the viaduct.

Mrs. Smith, Olen's mother, testified that the morning after the accident, Peveto came to the hospital and told her that he was the man that hit Olen. She took him into the room where Olen was in bed.

Fay Lee Smith and George Smith were in the room with Olen when Peveto came in. They testified, in substance, that their mother introduced Peveto to Olen and said "This is the man that hit you." A conversation ensued between Peveto and Olen. In that conversation Olen said to Peveto: "Why did you hit me, my tail light was burning?" Peveto replied: "I think it was as much your fault as it was mine." To this Olen replied: "I don't see how it was, because I had a big tail light and all my lights on the car were burning." To this Peveto made no reply, but left the room at once.

A number of photographs of Olen's car, taken a few days after the accident, were put in evidence. It was shown that the various damaged places on the car, which were revealed by the photographs, occurred in the collision in question. The photographs disclosed the following damage to the car: The center part of the rear bumper was broken and bent in against the spare tire which was bolted on the rear end of the body of the car; the rear right-hand fender was badly bent; a large hole was smashed through the windshield, on the left-hand side, immediately above the vacuum tank. In one of the photographs a man is shown standing on the ground, with the hood of the car raised. His position is such as a person would ordinarily occupy in inspecting or filling the vacuum tank. In this position, the photograph shows the right side of his head to be immediately in front of and but a few inches from the large hole smashed through the windshield. It further appears in testimony that the injuries received by Olen, in the catastrophe, included these: The right side of his head was badly bruised and lacerated; his right jaw was broken and his teeth knocked out; his right thigh, near the upper end, was bruised.

It appears in testimony that on Louisiana street, a short distance from the western end of the viaduct, there were two beer parlors and a liquor store and that Peveto spent most of the afternoon of April 22, 1936, in this vicinity. His truck was parked in front of one of these beer parlors. He was seen by one witness, the waitress in this beer parlor, to drink seven or eight bottles of beer. He then left this beer parlor, was gone

about a half hour and upon his return drank about the same number of bottles of beer as he did while there the first time. Another witness testified that during that same afternoon, along about 4 o'clock, she saw Peveto emerging from the other beer parlor, and that he was slightly intoxicated at that time. Late in the evening Peveto went to his truck, got in it, and drove out Louisiana street in the direction of the viaduct. A witness who saw him get in the truck testified that Peveto was intoxicated at that time. Peveto was present at the trial of the case, but did not testify; nor did the plaintiffs in error call any other witness to the witness stand. We have stated the substance of all the testimony which has any bearing on the question of Peveto's negligence as well as that which bears on the question of proximate cause. A careful study of the circumstances in evidence leads inevitably to the conclusion that they not only raise the fact issue of Peveto's negligence in driving his truck along on the viaduct while he was under the influence of intoxicating liquor but also the fact issue as to such negligence being the proximate cause of Olen's injuries. It was the province of the jury to draw any and all inferences reasonably capable of being drawn from the circumstances shown in evidence. For instance, it was perfectly reasonable to infer that but for the fact that Peveto was under the influence of intoxicating liquor he would not have driven his truck against the back end of Olen's car as he did. It was reasonable for the jury to draw from circumstances in evidence the inference that at the time of the impact Olen was bending over the vacuum tank of his car and by the impact the windshield was jammed against his head and broken as it was. Along with other circumstances in evidence, the very fact that Peveto, next morning at the hospital, when taxed by Olen with causing his injuries, failed to explain in what way Olen was at fault, as Peveto then claimed, would furnish a reasonable basis for an inference that Peveto by his own act solely, in driving his truck against the back end of Olen's car, brought about the injuries to Olen. In a word, we conclude that the facts and circumstances in evidence, when considered together, amply justify the finding of the jury that Peveto was guilty of negligence in driving his truck along the public highway while under the influence of intoxicating liquor and that such negligence was the proximate cause of the collision and resulting injuries to Olen. The jury, in answer to other special issues, acquitted Olen of contributory negligence.

■ It is further contended that there is no evidence to show that Olen Smith was injured at the time and place alleged in

the petition. The argument made in support of the contention is to the effect that the testimony of Everett Smith shows that, when Olen's car stopped on the viaduct, Olen examined the vacuum tank and found it to be dry, and thereupon he and Everett went as far as the Shell Filling Station at the western end of the viaduct, where Olen stopped and Everett went on into Beaumont; and further, that the testimony of Martin Richardson shows that he, Richardson, saw somebody hit Olen's car and that "nobody was there." It is enough to say in disposing of this contention that other circumstances in evidence, including those disclosed by the testimony of J. W. Long and Ralph Wilson, are sufficient foundation for the jury to infer, as they presumably did, that at the time of the collision, Olen was standing beside his car filling the vacuum tank. The contention of the plaintiffs in error in this respect is overruled.

Thus far we have considered the case as it relates to both Peveto and Jackson. In the application, however, a complaint is made by Jackson alone. The facts which this complaint involves are substantially as follows:

The transcript contains a bill of exception, duly approved by the trial judge, which reads as follows:

"BE IT REMEMBERED that upon the trial of the above numbered and entitled cause, at the conclusion of the evidence, and after overruling defendants' demurrer to the plaintiff's evidence and defendants' motion for an instructed verdict, and before he read his written charge to the jury, the trial judge, in the presence and hearing of the jury announced and directed judgment in favor of defendant H. B. Jackson. Such erroneous ruling and order was by defendants' counsel called to the court's attention, before the judge read his charge to the jury but without correcting such error and advising the jury, the judge submitted and read to the jury his charge and special issues as between plaintiff and only defendant Arlas Peveto, and, upon answers thereto favorable to plaintiff, entered judgment against both the defendants, H. B. Jackson and Arlas Peveto as partners in business.

"To which action of the court the defendants in open court except because the jury was prevented from considering the rights of defendant Jackson in their deliberations and answers to such special issues."

It appears from the foregoing bill of exception that before the case was submitted to the jury, the trial court rendered judgment in favor of Jackson, and that thereafter the trial proceeded before the jury solely as between the plaintiff and

Peveto. It further appears that the judgment which the trial court finally entered in the case—being the judgment from which this appeal is prosecuted— is based on the fact findings made by the jury in response to special issues submitted to them as between the plaintiff and Peveto alone. The said final judgment appears in the transcript and same appears to be against both Peveto and Jackson, individually, without reference to the alleged partnership relation. In this situation, nothing to the contrary appearing, the only reasonable conclusion we can draw is that no fact question raised by the evidence, concerning Jackson's liability, was submitted to the jury for determination, and that the fact findings made by the jury involve the plaintiff and Peveto alone. Obviously, in this situation, the fact findings made by the jury have no more binding force on Jackson than if he were never a party to the suit. The judgment which the trial court finally entered in the case was effectual as against Peveto, individually, but wholly ineffectual as against Jackson in any respect. From whatever angle the situation is viewed, it appears that the judgment which was entered against Jackson has no support from the jury verdict in the case, and is, therefore, erroneous. See Frank v. Tatum, 87 Texas 204, 25 S. W. 409; Glasscock v. Price, 92 Texas 271, 47 S. W. 965.

In so far as the judgment of the trial court is against Jackson, the same, together with the judgment of affirmance rendered by the Court of Civil Appeals in this respect, are both reversed and judgment is here rendered for Jackson. In all other respects the judgment of the trial court and that of the Court of Civil Appeals are affirmed.

Opinion adopted by the Supreme Court November 29, 1939.

Rehearing overruled January 31, 1940.