Leota FLANIGAN, a Widow et al., Appellants,

v.

TEXAS & PACIFIC RAILWAY COMPANY, Appellee.

No. 5040.

Court of Civil Appeals of Texas.

El Paso.

Sept. 29, 1954.

Rehearing Denied Nov. 3, 1954.

Reagan H. Legg, Midland, Curtis White, Dallas, for appellants.

Charles L. Klapproth, Midland, Mays & Leonard, Sweetwater, for appellee.

McGILL, Justice.

This is a suit for damages for death arising out of a grade crossing accident,

The accident occurred in the city of Midland, Texas, on November 18, 1951, at about 7:45 P.M., at an intersection of Garfield Street and the main line track of appellee. The automobile driven by the deceased Lester Flanigan was traveling south on Garfield Street. When it had reached the railroad track it was struck by an engine of appellee to which was attached a car loaded with cement and a caboose, that was proceeding in an easterly direction. Trial was to a jury, and on answers to special issues the court rendered judgment that plaintiffs take nothing.

Plaintiffs pled and relied on the doctrine of discovered peril. The findings on which appellants seek a reversal by their points 1 to 4 are: 1—The operatives of defendant's train failed to keep the bell on said train ringing continuously from a point at least 80 rods from the Garfield Street crossing until the engine had crossed Garfield Street; 2—Such failure was the proximate cause of the collision; 3—The operatives of defendant's train failed to sound the whistle on said train at least 80 rods from the Garfield Street crossing; 4—Such failure was a proximate cause of the collision; 8—Lester Flanigan occupied a position of peril just prior to the collision between the train and the car he was driving; 9—The operatives of defendant's train discovered and realized before the collision that Lester Flanigan occupied a position of peril; 10—Such discovery and realization was in time so that in the exercise of ordinary care in the use of all the means at hand the operatives of defendant's train could have avoided the injury and death of Lester Flanigan without injury to themselves or defendant's train; 11—After discovering and realizing that Lester Flanigan occupied a position of peril the operatives of defendant's train in the exercise of ordinary care realized that Lester Flanigan probably would not free himself from impending injury; 12—After the operatives discovered and realized that Lester Flanigan occupied a position of peril, and that Lester Flanigan would not probably free himself from impending injury, they did not fail to use ordinary care in the use of all means at hand consistent with their own safety and the safety of defendant's train to avoid the injury and death of Lester Flanigan.

It is appellants' contention that findings 1, 2, 3 and 4 convict defendant's operatives of negligence proximately causing Flanigan's death in their failure to keep the bell ringing and to sound the whistle, and these findings, considered with findings 8, 9 and 10 and 11 made the finding 12 surplusage and entitle plaintiffs to a judgment, and therefore the court erred in overruling plaintiffs' motion to set aside the judgment and enter judgment for plaintiffs; also in any event findings 1 and 3 are in conflict with finding 12 and finding 10 is in conflict with finding 12, and for these reasons the court erred in failing to grant plaintiffs a new trial.

Even though finding 12 be disregarded, plaintiffs were not entitled to a judgment on findings 1, 2, 3 and 4, because there were findings convicting Flanigan of contributory negligence. These other findings would bar plaintiffs' recovery except on the doctrine of discovered peril. There is no finding that the operatives failed to use ordinary care in the use of the means at their command to avoid the accident after discovery of the peril and realization that Flanigan probably would not extricate himself therefrom. Such finding is essential to warrant a recovery on the theory of discovered peril. Findings 1, 2, 3 and 4 do not supply such a finding, as will be hereinafter demonstrated.

It is true that

"Use of means at his command by a train operative is not necessarily restricted to stopping or slowing the train to avoid striking the party in peril. It may include as well the giving of an alarm by bell or whistle so that the one in peril may have an opportunity to extricate himself. This principle is based on the fact that the injured party's peril may be discovered when it is too late to save him by stopping or slowing the train but the tragedy

may be averted by giving a warning." Texas & N. O. R. Co. v. Krasoff, 144 Tex. 436, 191 S.W.2d 1, 3; Texas & N. O. R. Co. v. Landrum, Tex.Civ.App., 264 S.W.2d 530, w. r. n. r. e.

Therefore, if findings 1 and 3 may properly be construed to mean that the operatives failed to ring the bell or sound the whistle after they discovered Flanigan's peril, and realized that he probably would not extricate himself therefrom, appellants' contention that there is an irreconcilable conflict between findings 1 and 3 and finding 12 would be sound. But we are not permitted to rewrite findings 1 and 3. There is nothing ambiguous about either of them. Finding 1 specifically finds failure to keep the bell ringing continuously from a point at least 80 rods from the Garfield Street crossing until the engine crossed the crossing. It does not find, nor may we assume, that the bell was not rung at any time while this distance was traversed, and especially after Flanigan's peril was discovered and the operatives realized he probably would not extricate himself therefrom. This is the important time—the time when the duty upon the operatives to warn Flanigan arose; likewise finding 3 is clear and unambiguous. It is that the operatives failed to sound the whistle at least 80 rods from the Garfield Street crossing, not that they failed to sound it at any time the train was traveling this 80 rods, and especially after the operatives discovered Flanigan's peril and realized that he probably would not extricate himself therefrom. It is true, as pointed out by appellants, that the brakeman and engineer testified that the bell was sounding continuously and the whistle was still whistling when the train went over the crossing; that other witnesses testified that the bell was not rung at all and that they did not hear a whistle. We also note that the engineer testified that when the brakeman said "plug it" that this meant to apply the emergency brake and put the sanders on. He did not say it meant to give any warning by bell or whistle. Nevertheless we cannot construe findings 1 and 3 to mean that the bell was not rung and the whistle not sounded at the crucial time, and there is no assignment that finding No. 12 is against the preponderance or great weight of the evidence, and we therefore cannot consider this question. It necessarily follows that there is no irreconcilable conflict between findings 1 and 3 and finding 12. There is no irreconcilable conflict between findings 10 and 12. Finding 10 does not include the element of extrication. In other words, the answer to Special Issue No. 10 may well mean that the operatives thought Flanigan was in a position of peril as he was approaching the track, but did not realize that he would not stop before going on the track, whereas the answer to special issue No. 12 was related to the time when the operatives did realize that Flanigan probably would not extricate himself from the perilous position he was in after he had driven on the track. Hence, since the times referred to may be different, there may have been time to avoid the injury in the exercise of ordinary care in the one instance and not in the other, and hence there is no conflict. These points are overruled.

The 5th and 6th points are that the court erred in refusing to permit plaintiffs to introduce in evidence those portions of the depositions of H. L. Bailey, defendant's brakeman, and O. E. Baldock, defendant's engineer, in which Mr. Frank Bezoni interrogated these witnesses. These oral depositions were taken on November 7, 1952. At that time two cases were pending in the District Court of Midland County, both of which grew out of the collision which occurred on November 18, 1951. Mrs. Pansy Dillon, in case No. 6492, was suing defendant and one Brennerman, d/b/a Ace Motors, Flanigan's employer, for injuries to herself and for the death of her husband and daughter; she was represented by Mr. Frank Bezoni. Mr. Legg and Mr. Curtis White represented Mr. Brennerman in that suit. In case No. 7040 (that is, this suit) Legg and White represented the plaintiffs; Perkins, Mays and Leonard represented the defendant railroad company in both suits. H. L. Bailey, the brakeman, lived in Big Spring,

Howard County, and O. E. Baldock, the engineer, lived in Sweetwater, in Nolan County. These witnesses were produced by the defendant railroad company before the official court reporter for the 118th Judicial District in Big Spring for the purpose of taking their oral depositions. Mr. Bezoni was present at this hearing and questioned both witnesses. Mr. Legg and Mr. White were also present, as well as Mr. Leonard of the firm representing the railway. The witnesses were questioned by all attorneys; the court reporter put the style and number of each suit on the cover containing the depositions, and also a stipulation preceding each deposition to the effect that it was agreed by the parties through their attorneys that the depositions might be taken; that formalities with reference to the taking and returning of the depositions were waived, and that the questions and answers propounded and given might be used as evidence upon the trial of this case by either party, subject to objection that could be made if the witnesses were on the stand. However, this stipulation was not signed by any of the parties or their attorneys. The depositions were filed with the District Clerk of Midland County on November 17, 1952. No written objection to the form of either deposition or to the manner of taking either one was filed before the trial began.

■ Appellants seem first to contend that there was an agreement between counsel that the depositions might be used in either case. The trial court expressly refused to make such a finding and of course we cannot do so. Appellants next contend that in the absence of an agreement the portions of the depositions excluded were admissible under Rule 212, Texas Rules of Civil Procedure. If this Rule comprehends that the "manner of taking" the deposition refers to the attorney who propounds the questions on oral examination, (and we think it does not) yet Rule 213, T.R.C.P. required the court to exclude the proffered portions of the depositions unless they were taken in the suit on trial. We think they were not, since Mr. Bezoni represented no one in this suit. However, we have

carefully read all of those portions of the depositions which were excluded, and think the evidence offered was merely cumulative of that admitted, and hence in any event there was no reversible error. These points are overruled.

■ Special Issue No. 34 submitted by the court was as follows:

"Special Issue No. 34. Do you find from a preponderance of the evidence that as Flanigan approached the Garfield Street crossing the train of the Texas & Pacific Railway Company was approaching said crossing within approximately 1500 feet, and emitted a signal audible from such distance, and such train by reason of its speed or nearness to such crossing was an immediate hazard? Answer Yes or No. Answer: Yes."

Plaintiff objected to the submission of this issue on the ground that it was multifarious and on the weight of the evidence in that it assumed that the train emitted a signal, which was a vital issue in dispute. The overruling of this objection is the basis of appellants' 7th point of error. We think the objection was not well taken. The Uniform Act Regulating Traffic on Highways, Sec. 86(c), Art. 6701(d), Vernon's Ann.Civ.St., provides:

"Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad and shall not proceed until he can do so safely when * * * (c) A railroad engine approaching within approximately fifteen hundred (1500) feet of the highway crossing emits a signal audible from such distance and such engine by reason of its speed or nearness to such crossing is an immediate hazard."

We fail to see how this issue was on the weight of the evidence. It does not assume that the train emitted a signal, but requires the jury to find whether it emitted

a signal. This is clearly shown by the court's answer to the question propounded by the jury. Special Issue 34 merely grouped the evidentiary facts necessary to show that Flanigan violated this statute which would convict him of contributory negligence. Such grouping is not only proper, but necessary. Fox v. Dallas Hotel Co., 111 Tex. 461, 475, 240 S.W. 517, 522; City of Abilene v. Moore, Tex.Civ. App., 12 S.W.2d 604 (wr.ref.). Howell v. Howell, 147 Tex. 14, 210 S.W.2d 978; 41b Tex.Jur. 589. Furthermore, even though Special Issue were erroneously submitted, no reversible error is shown since under other findings Flanigan was convicted of contributory negligence which proximately caused his death. Point 7 is overruled.

■ Appellants' points 8 and 9 are that the court erred in submitting Special Issue No. 8 inquiring whether Flanigan drove his car while under the influence of intoxicating liquor, because the evidence was insufficient to justify its submission, and this was not an ultimate issue but merely evidentiary, and was inflammatory; and also that the court erred in submitting Special Issue No. 9 inquiring whether Flanigan's driving while under the influence of intoxicating liquor was a proximate cause of the collision, for like reasons.

We think Special Issue No. 8 was an ultimate issue, and that contributory negligence could be based on the jury's answer thereto. Peveto v. Smith, 134 Tex. 308, 133 S.W.2d 572 (Com.App. opinion adopted); Western Cotton Oil Co. v. Mayes, Tex.Civ.App., 245 S.W.2d 280, loc. cit. 287. We also think that the evidence was sufficient to raise the issue. It revealed that Flanigan had been drinking a considerable quantity of beer at the American Legion Home during the afternoon, and more beer at the Manhattan Cafe just prior to the accident. While there is no evidence that he acted as though he were under the influence of intoxicating liquor, yet the jury could infer from the fact of his having been drinking beer that it did have some influence on him.

These points are overruled, and the judgment is affirmed.

HAMILTON, C. J., not sitting.

FRASER, Justice.

I concur in the disposition of this case because it seems clear that the jury findings when viewed as a cumulative whole are in effect not in conflict. Fairly analyzed and without reading anything into the answers or the issues, the jury apparently found that the train operators did not *continuously* sound warning devices on the way to this crossing, but that after discovering Flanigan's position of peril they had a right to assume he would and could extricate himself. Further, it then became clear to the train operators that Flanigan was not going to extricate himself and they did not fail to take immediately available steps to avert or mitigate the accident.

The doctrine seems well established that where one is discovered some distance ahead of the train and a timely warning is given, those in charge of the train can presume that such a person is in full possession of all his faculties and will place himself beyond the reach of danger, and the operators of the train are not bound to stop or check the train unless and until the circumstances make it apparent that the person is unaware of its approach or unable to extricate himself. Sisti v. Thompson, 149 Tex. 189, 229 S.W.2d 610; 22 R.C.L., Sec. 198, p. 964; 30 Tex.Jur. ¶ 37, p. 688; Horwitz v. Jefferson County Traction Co., Tex.Civ.App., 188 S.W. 26 (er.ref.).