Lola HILL et al., Appellants,

v.

SABINE PIPE & SUPPLY COMPANY et al., Appellees.

No. 6748

Court of Civil Appeals of Texas. Texarkana.

Oct. 14, 1954.

Rehearing Denied Nov. 18, 1954.

Davenport & Anderson, John Davenport, Henry J. Anderson, Wichita Falls, Joe McCasland, Jefferson, Woodrow H. Edwards, Mt. Vernon, for appellants.

Atchley & Vance, Texarkana, Charles F. Potter, Tyler, Bill J. Cornelius, Jefferson, Leachman, Matthews & Gardere, Henry D. Akin, Dallas, for appellees.

HALL, Chief Justice.

This is a suit for damages for the alleged wrongful death of Orville Hill, husband and father of appellants, instituted by Lola Hill, surviving wife, for herself and as next friend for her two children. The action was brought against appellees, Sabine Pipe & Supply Company, a corporation of Kilgore, Texas, and its successor, Sabine Machine & Supply Company.

Trial was to a jury which resulted in a verdict favorable to appellants. The trial court on motion of appellees, defendants below, entered judgment non obstante veredicto for them.

Appellants' Point 1 asserts that the trial court erred "in rendering judgment notwithstanding the verdict of the jury in favor of defendants (appellees) since there was evidence of probative value justifying submission of special issues to the jury and their answers thereto."

Point 2 asserts that the trial court erred in refusing to enter judgment for plaintiffs (appellants) based upon the verdict of the jury.

Orville Hill, deceased, was employed by Marshall Pipe & Supply Company of Nocona, Texas, and on the day of his fatal injury had driven a truck for his employer to Oil City, Louisiana, for a load of pipe. G. A. Bagwell, another employee of Marshall Pipe & Supply Company, also drove a truck for his employer on the same date to Oil City for the same purpose. These parties after arriving at Oil City finished loading their pipe on their trucks around 4:00 p. m. While Hill and Bagwell were at Oil City they met two other truck drivers, Son Wilson and Ray Smith from Kilgore, Texas, employees of appellee Sabine Pipe & Supply Company. These latter drivers did not load any pipe on their trucks. The four truck drivers met at an eating place at Oil City, after Hill and Bagwell had loaded their trucks, and drank about three beers each. From Oil City all four started home, going by way of the First and Last Chance Saloon on the Louisiana-Texas line, where each of them drank more beer. Ray Smith, one of the drivers for appellee, left first, "like a streak of lightning" as testified to by the witnesses. He was followed about five minutes later by Orville Hill. Shortly after Hill left, Bagwell and Wilson left. All the trucks were traveling the highway leading toward Jefferson, Texas. Hill came upon Smith's truck about eight or ten miles west of the First and Last Chance Saloon. Smith's truck was off the road to the right and was down the dump and through the fence. Hill passed Smith's truck for some distance, parked his truck and came back to aid Smith in getting out of the ditch. After Smith had got the truck out of the ditch, the other two drivers,

Wilson and Bagwell, drove up, passed the Hill and Smith trucks, and parked on the right side of the road. They went back to Smith's truck and found him inside, on the driver's side, asleep with his head and arms on the steering wheel. They could not rouse him. They called Hill who did not answer. While they were trying to arouse Smith, a party passed all the trucks going east, and some 200 feet east of the back truck, which was Smith's, found Hill lying to the right of the highway, near the paved portion. This witness came back to Wilson and Bagwell who were beside Smith's truck, and asked if they had lost a man. They said they had, and all went back to where Hill was lying beside the highway. Hill was suffering intensely, but was conscious and able to talk. The witnesses stated as follows: "We asked him what had happened to him and he said he was trying to direct that truck back out of the ditch and the man came back up on the road and shot the gas to it and ran over him. * * * He just said the truck ran off in the ditch and he came back and tried to get him out of the ditch and he was directing him out and when the trailer came back up on the road the man shot the gas to it and ran over him; he said he thought he was out of the way, but he wasn't." Immediately after this conversation between Hill and the witnesses, an ambulance was summoned from Jefferson. Hill was carried to Jefferson for first aid, then to a Marshall hospital, and later the same night to a hospital in Shreveport, Louisiana, where he died seven days later. The next morning after the tragedy, a witness found Hill's hat near a truck track identified as Smith's. The testimony is without dispute that Smith was under the influence of intoxicating liquor when he drove his truck away from the saloon and when he was found slumped over the steering wheel after Hill's injury.

The facts relating to the actual tragedy are meagre. We have only the statement of Hill made to the witnesses shortly after the accident happened, together with truck tire-marks found near where Hill's hat was found and his body lay on the ground.

Based on these facts, the jury found Smith guilty of negligence which was the proximate cause of Hill's injury and subsequent death, and also that Hill was not guilty of contributory negligence. No other evidence was before the jury than that detailed above. There is no evidence showing where Hill was while he was directing Smith out of the ditch. Smith's truck consisted of a tractor with dual rear wheels to which was attached a floating trailer which also had dual wheels on the rear. We do not know from the evidence whether Hill was to the right, left, or behind the trailer, or which position he occupied with respect to the tractor. We have no way of knowing, nor did the jury, from the facts in this record, whether Hill was in a position to be seen by Smith at the time Hill was directing him out of the ditch. We do not know whether Hill was directing Smith by words or signs. All we know from Hill's statement is that he was directing Smith out of a ditch and that Smith ran over him, and that he, Hill, thought he was out of the way but was not. The record does not disclose whether Hill was struck by the tractor or trailer and there is nothing in the testimony to show whether Smith saw Hill in time to avoid striking him, or that Smith ever knew Hill was in peril. All this is left to surmise.

■■■ It is just as necessary in an action of this character for the evidence to establish causal connection between the negligent act or omission as it is to establish the negligent act or omission itself. No judgment for damages can stand without establishing negligence on the part of the actor and that such negligence was the proximate cause of the injury to the injured party.

We find no evidence in this record, either direct or circumstantial, which would indicate that Smith failed to keep a proper lookout for the safety of Hill. The mere act of "shooting" the gasoline to the motor in an effort to move the tractor and trailer out of the ditch would not be sufficient to establish a causal connection between Smith's alleged negligence and Hill's in-

jury. In Texas & Pacific Railway Co. v. Shoemaker, 98 Tex. 451, 84 S.W. 1049, 1051, it is said: " * * * But, aside from this, the failure to keep a proper lookout, either from incapacity or other reason, could only be deemed the proximate cause of the deaths when it appeared that the keeping of it would have prevented the unfortunate occurrence, and no inference of this fact can be drawn from the evidence. What were the boys doing as the train approached them? How long were they on the track before they were struck? What was their position? An answer to these questions must be found before it can be said that there was a failure to keep a proper lookout, and that such a lookout would have discovered them in danger in time to have enabled those controlling the train to have saved them; and for such answer the evidence may be searched in vain. *This fact of causal connection between an alleged negligent act or omission and an injury can no more be presumed than can the act or omission itself.*" Citing cases. See also Texas & N. O. Ry. Co. v. Zarate, Tex.Civ.App., 74 S.W.2d 721, w/r; Comet Motor Freight Lines v. Holmes, Tex.Civ. App., 203 S.W.2d 233, 235, w/r, n. r. e.; Nugent v. Northcutt, Tex.Civ.App., 256 S.W.2d 973, w/r, n. r. e. Many, many more cases could be cited following the Shoemaker case.

We have carefully examined all authorities presented by appellants, and in our opinion, none of them present a factual situation comparable to that presented here. Perhaps the nearest in point of fact is Peveto v. Smith, 134 Tex. 308, 133 S.W.2d 572, 576, by the Commission of Appeals, opinion adopted by the Supreme Court. In that case, Peveto, the driver of the truck which struck deceased's car, was in an intoxicated condition. Smith, the injured party, later deceased, had stopped his car late in the afternoon on the right side of a viaduct or bridge on U. S. Highway 90 over the Neches river just east of the city of Beaumont. His car was out of gas and he went back a short distance to a filling station to get gas. The lights, both front and rear, on his car were burning. When

Smith returned to his car, he raised the left side of the hood and was working with or examining the vacuum tank. While in this position, Peveto ran into the rear of Smith's car with such force that the car was driven forward, throwing the right side of Smith's head against the windshield, breaking Smith's lower and upper jaw and causing other injuries to him from which he died five days later. The windshield of Smith's car was broken at a point near where his head was when he was working with the vacuum tank under the hood. In discussing this case, the Commission of Appeals stated: " * * * the very fact that Peveto, next morning at the hospital, when taxed by Olen (Smith) with causing his injuries, failed to explain in what way Olen was at fault, as Peveto then claimed, would furnish a reasonable basis for an inference that Peveto by his own act solely, in driving his truck against the back end of Olen's car, brought about the injuries to Olen."

We think it is apparent that the evidence in the Peveto case is very much stronger than the evidence here, because it directly connects Peveto with the injury to Smith. Furthermore, the lights were on Smith's car, nothing to keep Peveto from seeing it and Smith was bending over on the left side of his car in a position undoubtedly in plain view of Peveto had he been keeping a proper lookout. There are no such circumstances in the case here. Hill stated when first questioned by Bagwell and others, that he was directing Smith out of the ditch; that Smith shot the gas to the truck and ran over him. "I thought I was out of the way but I wasn't." As heretofore pointed out, no witness testifies that Hill was in view of Smith, the driver of the truck.

From this record, in the light of all the authorities we have investigated, it is our conclusion that the evidence is insufficient to show that any negligent act of the driver, Smith, was a proximate cause of the death of Hill, and the trial court was correct in entering judgment non obstante veredicto for appellees. Therefore, appellants' Points 1 and 2 are respectfully overruled.

The conclusion expressed above renders a discussion of the other points brought forward unnecessary. But regardless of this, we have examined them carefully and the authorities cited by appellants and have reached the conclusion that they are without merit, and they are overruled. We wish to express our appreciation of the excellent and exhaustive briefs presented by both parties on this appeal.

The judgment of the trial court is affirmed.