## CITY OF WICHITA FALLS v. MAULDIN et ux. (No. 12191.) *

Court of Civil Appeals of Texas. Fort Worth. Oct. 12, 1929.

Rehearing Denied Nov. 9, 1929.

Thelbert Martin and Harvey Harris, both of Wichita Falls, for appellant.

George & Brannan, of Wichita Falls, for appellees.

CONNER, C. J. This is an appeal from a judgment in appellees' favor for the sum of $525 as damages caused by an overflow of their premises. The city of Wichita Falls denied liability. The briefs of the parties and the records are somewhat voluminous, but we think the case can be disposed of briefly. The facts out of which appellees' action arose are substantially as follows: Appellees owned lot 8 in block 8 of one of the additions to the city of Wichita Falls; the lot faces Broad avenue, a graded street which extends north and south and intersects Twenty-First street, which runs east and west; one small lot, an alley, and one block of land intervenes between appellees' residence and Twenty-First street. To the north and east of Twenty-First street, covering some 200 or more acres, the land is platted into lots and blocks with streets intersecting one another at right angles. The area mentioned constitutes a watershed from which, before the improvements, the floodwaters were carried away by a natural drain which extended from the northwest in a southeastern direction over the northeast corner of a small lot immediately north and adjacent to appellees' premises. The evidence warrants the conclusion that by the grading and hard-surfacing of the streets to the northeast, and west of appellees' premises in the watershed under consideration, floodwaters were collected and caused to run down Holliday street, which extends from the northwest to the southeast. The southeast end of Holliday street terminates in the natural drain referred to, through and along which waters passed across property of the Wichita Valley Railroad Company under a bridge and on down across Sibley avenue to Twenty-First street. The city cut down and graded Twenty-First street, which extended across the natural drain and turned the flood waters that came into Twenty-First street west to and down Broad avenue until it reached the alley north of the lot adjacent to appellees' premises. At that point, the city, it seems, cut a ditch through the alley and turned the drain into

---

the ditch, which extends east to the natural drain.

The case was submitted to a jury upon special issues, which, together with the answers of the jury thereto, are as follows:

"1. Did the paving of Broad Street and the grading down of Twenty-first Street and the paving of streets in the same watershed of plaintiffs' lot cause an additional amount of water to flow across or back upon plaintiffs' property? Answer: Yes.

"2. Was the City of Wichita Falls negligent in failing to install storm sewers or other proper drainage when or after it paved Broad Street and lowered the grade of Twenty-first Street? Answer: Yes.

"3. If you have answered issue No. 2 'yes', then answer: Was such negligence a proximate cause of the injury to plaintiffs' property, if any? Answer: Yes.

"4. If you have answered issue No. 3 'yes', then answer: What amount of damage, if any, plaintiff has sustained? Answer: $525.-00.

"5. Did the filling in of the lots adjacent to and east of plaintiffs' property cause the water to back upon and flow over plaintiffs' property? Answer: No."

Appellant city by demurrers, objections to evidence, to the submission of issues, etc., raised the question of whether the city was liable in any sum. It is insisted in behalf of appellant that the grading and paving of the streets in question by the city was for the benefit of the public generally, and that in so doing it was exercising a governmental function and not legally liable for any injuries to appellees' property or damages sustained by them by reason of such grading and paving of the streets. In support of the proposition so stated, the appellant city cites the cases of City of Navasota v. Pearce, 46 Tex. 525, 26 Am. Rep. 279, and Wallace v. City of Dallas, 2 Posey, Unrep. Cas. page 424. These are early cases, and we have not found where, if at all, they have been cited or discussed in later decisions. In the case of City of Navasota v. Pearce, it appears that Pearce sued the city for damages because of injuries alleged to have been caused by the negligent failure of the city authorities to keep the streets, etc., in a safe condition for traveling; that as a proximate cause thereof the plaintiff on October 29, 1872, while driving his horse and buggy in one of the public streets of said city, his horse slipped and fell, and while scrambling, rolled into a ditch, receiving a wound from the shaft of his buggy, then broken, from which the horse died; and the buggy was greatly injured. After discussing at considerable length the doctrine that a municipal corporation in the exercise of its governmental functions cannot be held liable, it is said, quoting from the headnote, that: "No action for damage can be main-tained against a municipal corporation, such as a town or city, to which the 'exclusive control and power over its streets, alleys, and public grounds and highways' is given by its charter, by a party who has suffered an injury occasioned through want of repair of its streets."

It has been held many times since the date of the above opinion that it is the duty of any incorporated city to see that its streets and sidewalks are maintained in a reasonably safe condition for use by the public and that it is liable for negligence in this respect which proximately results in injury. See City of Dallas v. Strayer (Tex. Civ. App.) 73 S. W. 980; City of McKinney v. Brown (Tex. Civ. App.) 81 S. W. 88; City of San Antonio v. Wildenstein, 49 Tex. Civ. App. 514, 109 S. W. 231; City of Dallas v. Halford (Tex. Civ. App.) 210 S. W. 725. In the case of City of Dallas v. Maxwell (Tex. Civ. App.) 231 S. W. 429, it was held that it was the duty of the city to erect and maintain a railing or barrier along a street at a point where a jitney bus left the street and plunged into a ravine, and that it was immaterial to the city's liability under the facts whether the ravine was private or municipal property.

In the case of Wallace v. City of Dallas, decided by our old Commission of Appeals, Wallace sought to recover damages for injuries to his lot and storehouse thereon, situated in the city, by reason of the action of the city council in having caused the grade of a street in front of his property to be raised, and also by reason of having caused to be filled up a natural outlet or channel for the flow of water, which channel was adjacent to plaintiff's lot, and causing to be constructed in place thereof an insufficient sewer or outlet for the flow of water, which formerly had found its passage through the said natural channel; the result of these changes being that in November, 1883, on the occasion of a heavy rainfall, plaintiff's lot and storehouse were overflowed with water and he was thereby damaged, as alleged, in the sum of $1,500. A trial on the merits before a jury resulted in a verdict and judgment thereon for the defendant city. The judgment on appeal was affirmed, the Commission holding that, quoting from the headnote: "In the exercise of the power to grade its streets and to provide drainage or sewerage, a municipal corporation does not become liable for the damage caused by the overflow of surface water."

The affirmance of the judgment was not upon the ground that the evidence failed to support the material allegations of the plaintiff's petition, but on the ground that the city had the lawful right to raise the grade in the street and to establish and change a system of drainage for the city, so as to carry off the surface water which might accumulate within the city limits; and that if the officers of the city, who were charged with the duty

of grading the street and constructing a new ditch or sewer, performed their duty unskillfully or negligently, they, and not the city, would be liable for injuries caused by such unskillful or negligent construction. The court further stated that the doctrine of contributory negligence on the part of plaintiff applied, and that the plaintiff had contributed to the injury sustained by him in not raising his house to the level of the street, which, if he had done, would have prevented the damage for which he sought recovery.

We think it may be conceded, as will perhaps appear by authorities hereinafter cited, that when authorized by statute or charter to establish streets and alleys and plans of sewerage, a city is not liable for injuries to property not involving a constitutional taking which are referable to mere defects in the plans themselves. See McQuillan on Municipal Corporations, vol. 6, § 2693, p. 5529. And it is perhaps not entirely without merit to note that in the case against the city of Dallas, the insufficiency of the sewer or ditch found to be inadequate to prevent the overflow of waters there complained of was but a necessary incident of the construction or elevation of the street and hence referable to the plan adopted, rather than to any defect in or negligence of the city in its construction. However, whether the Navasota and Dallas City Cases can be distinguished or not, we feel unwilling to apply to the facts of this case the principle of nonliability, which appellant insists the cited cases establish.

It is conceded that the city of Wichita Falls by statute and charter had full power and control of its streets and was authorized to make all necessary sewers and causeways for the passage of the surface and other waters. In 40 Cyc. p. 571, par. 3, it is said: "Any obstruction in a watercourse, of whatever nature and by whomsoever caused, is, if unlawful in itself or placed there without authority, an actionable injury to one whose riparian rights are thereby interfered with, or whose lands are thereby flooded; and the same is true of an obstruction caused by municipal improvements which are negligently constructed or are without sufficient provision for carrying off the water."

In 9 R. C. L. p. 660, § 52, it is said: "It may be stated as a general rule that a municipal corporation is not bound to construct sewers, and that in the absence of a mandatory statute the corporation is not liable in damages for wholly failing to provide sewerage or drainage, unless they are made necessary by its own act, as where through change of street grades water is cast upon private property, thus causing injury which could be prevented by proper sewerage."

Again on page 684, § 78: "It is well settled that as a general rule what would be illegal in the disposition of surface or other waters in the case of a private individual is likewise illegal when attempted by the public authorities. Unless by agreement or in the exercise of the power of eminent domain and by the payment of damages the public authorities have acquired the right to collect and discharge the water upon the land of another, they have no more right to do so than has an individual. So a municipal corporation is liable to one upon whose lands it conducts surface water wrongfully diverted from its natural channel."

The quotations from the text-books that we have copied seem amply supported by authorities cited in the notes of the publishers. It seems to us that where, as shown in the case before us, a city has subdivided a watershed into lots, streets, and alleys, and has improved its streets by interrupting the natural flow of surface water, making them impervious to water as part of its scheme of improvement, the city is in duty bound to supply a system of drainage sufficient to carry off the water which may be reasonably expected to accumulate from the ordinary rainfall of the neighborhood so that it will not injure abutting property owners. See City of Louisville v. Knighton (Ky.) 100 S. W. 228, 8 L. R. A. (N. S.) 478.

The evidence is sufficient to support the jury's findings, as hereinbefore stated, and we conclude that appellant's contention that the city is not liable, under the facts found, for the reason that in the construction of its streets, alleys, and causeways and failure to provide sufficient sewerage, it was performing governmental functions, must be overruled in harmony with constitutional guaranties for the protection of the property of the citizens.

The subsidiary or incidental questions, we think, may be more briefly disposed of. The contention that the cause of the overflow on appellees' property was the filling in and raising of the lots of adjacent owners was adversely answered by the verdict of the jury, and the sufficiency of the evidence to support these issues is not questioned.

Objection was made to testimony to the effect that the lot and premises of plaintiffs had been damaged, on the ground, in substance, that plaintiffs' allegations and facts shown established a right of recovery, if at all, for temporary rather than permanent damages. There was testimony tending to show that plaintiffs' lot and premises was of the reasonable value of $1,500 prior to the improvement of Twenty-First street and Broad avenue and the interruption of the natural flow of waters; that in the condition it was left after such improvement the property was decreased in value at least one half. There was also testimony that the overflows objected to were recurrent in point of time. We think it may be said without quoting from the authorities that in cases where the

cause of injury is such that it may be easily remedied or merely recurrent, the measure of damages to the real estate would be the rental value thereof during the time of its submergence. G. C. & S. F. Ry. Co. v. Helsley, 62 Tex. 593; Ry. Co. v. Anderson, 79 Tex. 427, 15 S. W. 484, 23 Am. St. Rep. 350; Clark v. Dyer, 81 Tex. 339, 16 S. W. 1061; 9 R. C. L. p. 691, § 83. But in the case before us the parties seem to have treated the defective construction resulting in the damage as permanent rather than as merely temporary and recurrent. One of the plaintiffs testified to the effect that she had complained to several of the city officers seeking relief, which had been refused, and there is no showing on the part of the city at any time of an offer to reconstruct its sewers or causeways so as to take care of the surface waters caused by interruption of the natural drainage in order to avoid overflows on plaintiffs' premises.

The form in which the testimony as to the injury of the real estate is given is also objected to. To illustrate, the witness A. L. Lane was asked the following question by the attorney for the plaintiffs: "How much has that property (referring to the lot and house) been depreciated in value for the last 15 or 20 months due to the flood waters?" To which the witness answered "$700 or $800, I would say."

The witness Tarkington was asked: "How much less in your opinion is that property worth due to the fact that it has been flooded than it was in the condition it was before this street was paved?" To which the witness answered: "Well, I would judge 50% if I was going to buy the property, I would deduct 50% from the fact that the water floods that property."

No objection is made to the qualification of the witnesses who testified that they were acquainted with the property, etc., and Tarkington further testified that he had inspected the property and that if it had not been overflowed it was worth around $1,500 from a home standpoint, and from his experience in selling property, he would deduct it down to $750 or "probably more than that."

While it is doubtless true that the measure of damages for the permanent injury to real estate is the difference in value before and after the injury, and while an unexplained answer of a witness to the effect that the damage to plaintiffs' premises was in a given sum would be objectionable, yet where, in the same general connection, the witness and others, after qualifying themselves, states the value of the property before and after the injury, as we think is true in this case, no reversible error is shown.

In the case of Houston & T. C. Ry. Co. v. Ellis, 111 Tex. 15, 224 S. W. 471, Chief Justice Phillips said: "The value of property is a matter of opinion. A witness may give his opinion on the question. No objection was made that the witness here was not qualified by knowledge to give an opinion. His testimony shows that it related to value. It might have been preferable to have had him state his opinion as to the value of the pasture land before the fire and its value afterward, instead of stating the difference between the value before and after; but his answer had the same effect. In substance, it amounted to the same thing, and a court should look to the substance. We will not reverse a judgment upon such grounds. The testimony, and that of the other witnesses as well, under any fair interpretation had reference only to the difference in the value of the land occasioned by the defendant's wrongful act. That was the inquiry before the jury."

The quotation just made from the opinion of Judge Phillips we think may also be applied to appellant's objection to the testimony of plaintiff Mrs. Mauldin relating to the value of the several articles of personal property. She testified that the water overflowed the floors of her house several feet and thus injured its contents. She presented a list of rugs, furniture, wearing apparel, etc., and gave her opinion of the value of the several articles referred to.

In St. Louis Southwestern Ry. Co. v. Benjamin (Tex. Civ. App.) 161 S. W. 379, 380, it is said: "Where it is shown that goods destroyed had no market value at the place destroyed, and the condition of the goods is fully shown, it is not error to permit the appellee and wife to testify to their opinion as to the value of the use of said articles to them"—citing cases.

In Pecos & N. T. Ry. Co. v. Grundy (Tex. Civ. App.) 171 S. W. 318, it was held that to qualify the owner to testify to the value of his wearing apparel and household goods, he need not state their cost and the period of their use and their condition, and may, in an action for their loss by a carrier, testify to their value, the loss to him in money, and not what they would sell for.

In Black v. Nabarrette (Tex. Civ. App.) 281 S. W. 1087, it was held that in an action for value for used household effects, destroyed by fire, the value could not be ascertained by the market value of the various items, but must be determined from the owner's sworn estimate of fair and reasonable value to him as weighed by a jury in the light of the original cost, manner of use, etc.

We think that Mrs. Mauldin, having in her direct examination testified unequivocally that she knew the value of the household goods and effects destroyed and damaged, could give her opinion, subject, of course, to cross-examination; the weight to be given to the whole to be judged by the jury.

We find no material contradiction of Mrs. Mauldin's testimony, to the effect that

they had no advance notice of the overflow, and do not think the evidence otherwise sufficient to bar the plaintiffs' right of recovery on the ground of their contributory negligence, and that therefore the trial court committed no reversible error in refusing to submit the issues relating to that subject. It further appears that the evidence would have supported a verdict of damage to the plaintiffs' real estate of $750 and to the personal property injured and destroyed of $346, while the verdict is only $525, and we, on the whole, not having discovered any error or irregularity on the trial which requires a reversal of the judgment or that renders it probable that a more favorable result will be obtained by the city on another trial, accordingly overrule all assignments of error and affirm the judgment.