## LANGHAM v. TALBOTT.

### No. 13861.

Court of Civil Appeals of Texas. Dallas.
March 26, 1948.

Rehearing Denied June 4, 1948.

988

Leachman, Matthews & Gardere and Henry D. Akin, all of Dallas, for appellant.

B. C. Johnson and Clyde B. Meyer, both of Houston, and Ralph K. Gillen, of Dallas, for appellee.

YOUNG, Justice.

The action was to recover damages for personal injuries resulting from a highway collision between appellant's gasoline transport truck and appellee's Willys sedan, in which the latter was an occupant but not driving. Plaintiff below alleged specific acts of negligence on part of defendant's

driver proximately causing the collision; the truck owner defending upon ground of release executed by plaintiff; alternatively pleading contributory negligence of plaintiff and driver of his car (a soldier companion) directly resulting in the injuries complained of. Upon jury trial and answers on special issues with verdict of $15,000, judgment was rendered in such amount, less credit of $70.50 theretofore paid for release of claim; defendant prosecuting a timely appeal.

On the afternoon of May 19, 1945, at Cameron, plaintiff Talbott, aged 48, had struck up an acquaintance with a soldier (Mikolajczak) who remarked that he would like to see more of Texas. Then followed the automobile ride to Brenham, the soldier driving and agreeing to pay gasoline expenses if he could visit some friends there. The collision occurred on their return trip along Highway 36 about 11:00 o'clock that night, some six miles south of Caldwell, Burleson County, when defendant's transport truck struck them from behind, the car being knocked off the roadway and landing upside down. According to the soldier, who was still driving, with plaintiff riding on front seat, they were traveling on right side of road, speed 30 miles per hour, the collision coming suddenly and without warning. On the other hand, defendant's truck driver testified that he was traveling 30 to 40 miles per hour prior to the collision, saw no tail lights on any car ahead, and did not actually see plaintiff's vehicle until within 40 to 50 feet; that it was either stopped or traveling no more than two miles per hour at the time; that if plaintiff's car had been moving as much as five miles per hour he could have missed it; using all means at hand after discovering the car in front to avoid a collision. The jury found affirmatively on the subsidiary issues of negligence and proximate cause in connection with plaintiff's primary issues, viz.: (1) That James T. Burt (defendant's driver) failed to keep a proper lookout for plaintiff's car; (2) that Burt was driving his truck at a high and dangerous rate of speed at the time; (3) that just prior to the collision operator Burt drove his car too close to plaintiff's car before commencing the application of his brakes; (4) the truck was being operated as such time in excess of 45 miles per hour. Findings were in plaintiff's favor on all issues charging contributory negligence, viz.: (1) That the soldier driving plaintiff's car did not fail to keep a proper lookout for vehicles on the highway; (2) the Talbott car was not stopped just prior to the collision; (3) and was not being driven without a lighted tail light exhibiting one red light plainly visible for a distance of 500 feet to the rear; (4) just prior to the collision the soldier was driving the Talbott car at rate of 15 miles per hour; (5) plaintiff's car was not parked on the highway on the occasion in question. The jury also found that the collision was not due to an unavoidable accident; in favor of defendant on issues 31 to 34 involving discovered peril and that on May 22, 1945, when executing release of claim, plaintiff was not in possession of sufficient mental capacity.

Appellant's first point of error complains of the court's refusal of his requested issue No. 2, reading: "(a) Do you find from a preponderance of the evidence that at the time and on the occasion complained of Jesse J. Talbott failed to keep a proper lookout for his own safety?" "(b) Do you find from a preponderance of the evidence that such failure on the part of Jesse J. Talbott in failing to keep a proper lookout, if you have so found, was negligence as that term has been hereinbefore defined to you?" "(c) Do you find from a preponderance of the evidence that such negligence, if any, proximately caused or proximately contributed to cause the accident in question?" Defendant had pled that at time of the collision, plaintiff's car was being operated by his agent (the soldier) and that each occupant of the car was guilty of negligence proximately causing the accident in failing to keep a proper lookout. We conclude upon careful study of the record that the tendered issues should have been given. The defense had proceeded on the theory (not objected to) that the soldier's method of driving the car (whether negligent or not) was imputable to plaintiff; in other words, that the former was acting for and on behalf of plaintiff in its operation. Also there is no

hint of testimony that plaintiff had yielded to his companion, the soldier, a right of possession or control of the manner in which the car was being driven. It appears to us that in either of the situations just mentioned plaintiff would be bound to exercise the same degree of care in the matter of lookout as that required of the driver. Anderson v. Texas & N. O. Ry. Co., Tex.Civ.App., 63 S.W.2d 1079; Rigdon v. Crosby, 328 Ill.App. 399, 66 N.E.2d 190. But the point need not be argued. Even as a passenger or guest, the issue of proper lookout, applicable to plaintiff, was fully presented under the facts and circumstances of this record. 42 C.J., p. 1169; 5 Am.Jur., p. 769; Texas Mexican Ry. Co. v. Hoy, Tex.Com.App., 24 S.W.2d 18; Toney v. Herman Hale Lbr. Co., Tex.Civ. App., 36 S.W.2d 234; Whistler v. Freeman, Tex.Civ.App., 62 S.W.2d 674; Anderson v. Texas & N. O. Ry. Co., supra: "The rule is followed in a large majority of the states that, 'while the negligence of the operator of automobile is not chargeable to a passenger, still a passenger is bound to exercise such care for his own safety as the exigencies of the situation require. It is no less the duty of the passenger, where he has the opportunity to do so, than of the driver, to learn of danger and to avoid it if practicable.' Berry, Automobiles, § 571, and cases cited, several of which are Texas cases. Negligence of the guest or passenger is a question of fact to be determined by the jury. Texas City Terminal Co. v. Showalter, Tex.Civ.App., 257 S.W. 621; Davis v. Pettitt, Tex.Com.App., 258 S.W. 1046. The last decision cited is by the Commission of Appeals, and it was in terms approved by the Supreme Court 'on the question discussed in its opinion.'" Boltinghouse v. Thompson, Tex.Civ.App., 12 S.W. 2d 253, 255. Citing Valley Film Service v. Cruz, Tex.Civ.App., 173 S.W.2d 952, and Le Sage v. Smith, Tex.Civ.App., 145 S.W. 2d 308, 315, appellee says that it is only when the motorist ahead slows down his vehicle, intending to stop or change his course, that it is his duty to keep a lookout to the rear for oncoming cars; being essentially the issue presented here in the testimony of defendant's truck driver to the effect that he overran plaintiff's car because it had either stopped or was barely moving along the highway. "Our idea of a proper lookout (says the court in Le Sage v. Smith, supra) incumbent upon the operators of motor vehicles upon highways, is one that concerns vehicles in front of the party to be held to such rule, and not those approaching from behind, unless there appears some particular fact that calls the attention of the driver of the front car to the car that follows, which would impose some duty upon the driver of the front car to maintain such a lookout, or unless the *driver of such car either slows down his vehicle or intends to stop the same, under which circumstances, or either of them, it would be the driver's duty to keep a proper lookout for vehicles following such car * * \**."* (Italics ours.)

■ But plaintiff urges that all jury findings on this issue negative the existence of any condition that "would make it the duty of plaintiff or the driver of plaintiff's automobile to keep a lookout for any vehicle approaching from their rear." "We have repeatedly held (says the Commission of Appeals) that the fact that the findings of a jury upon a plaintiff's issues may negative the existence of a defensive special plea is no excuse for refusing to submit such issue when the same is raised by the evidence. * * * If a defendant pleads a special defense, and there is evidence in the record supporting such plea, he is entitled to have the same affirmatively submitted for the determination of the jury, and this regardless of whether the findings subsequently made upon plaintiff's issues may negative the existence of such defense. Northern Texas Traction Co. v. Woodall, Tex.Com.App., 299 S.W. 220; Montrief & Montrief v. Bragg, Tex.Com. App., 2 S.W.2d 276." Davis v. Estes, Tex. Com.App., 44 S.W.2d 952, 955.

■ In view of a retrial, the remaining points of error will be given no more than a brief discussion. One: The court did not err in overruling defendant's requested issues involving plaintiff's alleged state of intoxication at time of injury. "The question of appellant's intoxication was not an ultimate fact issue and it was not necessary that it be submitted to the jury as an issue.

The trial court's action in not so submitting it was correct. Appellant's intoxication was a fact to be considered by the jury, together with other circumstances, in answering the third special issue in the trial court's charge, which in our opinion sufficiently and correctly submitted the question as to appellant's heedless and reckless disregard, or conscious indifference." "That he (plaintiff's husband) was under the influence of intoxicants would be a fact that the jury had a right to take into consideration in determining whether he was guilty of contributory negligence or not, but it would not of itself convict deceased of such negligence." St. Louis, S. F. & T. Ry. Co. v. Morgan, Tex.Civ.App., 220 S.W. 281, 282; Hicks v. Frost, Tex.Civ.App., 195 S.W.2d 606, (N.R.E.).

■ Second: Under the instant facts the court's instruction relative to issue 35 (unavoidable accident) was correct; charging, as it did, that the term meant an occurrence happening "without negligence on the part of James T. Burt, *the soldier in question,* or Jesse J. Talbott." (Italics ours.) Texas Textile Mills v. Gregory, 142 Tex. 308, 177 S.W.2d 938. Defendant has gone to the jury on the doctrine of principal and agent; in other words, that negligence of the soldier driving the car was imputable to plaintiff. Hence counsel is in no position to urge that the inquiry on unavoidable accident should be limited to plaintiff and defendant; or object to the instruction on the ground that negligence of the soldier (the agent of plaintiff) "is not at all involved."

■ Third: We need not discuss the charge of plaintiff's injection of defendant's insurance coverage into the case, as the incident may not re-occur. However, the answer of defendant's witness Yates on cross-examination, using the words "insurance company," was in no sense responsive to any question and could not have been anticipated by plaintiff's counsel; making applicable the rule that "reversible error was not shown because a witness offered by defendants in action for injuries in automobile collision make a reference to defendants' insurance while being cross-examined, when such reference was made suddenly and inadvertently by witness and plaintiff's counsel was without fault in the matter." Texas Textile Mills v. Gregory, 142 Tex. 308, 177 S.W.2d 938, Syl. 3.

■ Fourth: The testimony of soldier Mikolajczak was in form of written deposition from which the court admitted the following: "Q. Did anything happen to the car in which you were riding about six miles before you reached the town of Caldwell, Texas, and if so, describe in detail just what happened to the car to the best of your knowledge? A. Yes, we were knocked off the road by a big gas truck which was tearing past us. I was close to the edge of the road and he passed with no warning horn. There were no bright lights to warn me and the next thing I knew we were knocked off the road, turned over. The truck was going in the same direction I was *and was going about 70 miles an hour.*" Defendant objected to the italicized part of such answer as not responsive, the witness not being further shown as qualified. We think the soldier's qualification to judge the speed of defendant's truck was sufficiently established in both direct and cross-examination. However, this part of the answer was in no sense responsive; defendant being thereby deprived of any opportunity of cross-examination on the highly controverted issue of speed.

■ Appellant made vigorous objection to the testimony of plaintiff's brother, J. L. Talbott, descriptive of what he termed the scene of the collision as viewed June 5 or 12 thereafter; his narrative taking in certain skid-marks on the pavement, deep ruts off the righthand shoulder of the highway, ending in a pile of banked up dirt; also a spot where "it looked like a car had been turned over," oil on ground, also pieces of seat packing and floor linoleum. All the matters complained of were but in substantial corroboration of testimony of Burt, the truck driver, and Sheriff Bates, defendant's witnesses, relating to conditions on the ground at time of the wreck. The evidence was relevant and admissible as against the contention of no showing that conditions were the same as on night

of collision, and that the record affirmatively indicated changed conditions due to time and traffic.

However, because of error hereinbefore indicated, the cause must be reversed and remanded for another trial.

BOND, C. J., dissents.

On Motion for Rehearing.

Rehearing denied.

BOND, Chief Justice (dissenting).

I am not in accord with the opinion of the majority in reversing the judgment of the trial court and remanding this cause for a new trial. Appellee's damages for personal injuries were the result of appellant's negligence, as found by the jury, in a rear-end collision with appellee's automobile, to which appellee in no way contributed.

The evidence conclusively shows that appellee and his companion, the driver of his automobile, while going down a public highway, in a slow, lawful manner, at a rate of speed not in excess of 15 miles per hour, on the right-hand side of the road, with the tail-lights visible for a distance of 500 feet, neither turning, stopping, or changing their course, nor intending to do so, appellant's truck, operated by a Mr. Burt, without warning of its approach, ran into the rear end of appellee's automobile, inflicting serious injuries to appellee. There is not a single word or line of probative evidence in this voluminous record of more than 500 pages that appellee had stopped, or slackened his speed, or was changing his course of travel, as to give rise for visible or audible signals, or to crane his neck, or look out for approaching vehicles to the rear. The law does not require a foolish thing.

The statute, Sec. K, Art. 801, Penal Code, makes it the duty of a person in charge of any vehicle upon a public highway, *before turning, stopping or changing his course,* to keep a lookout. No other contingency is prescribed in connection with the Law of the Road. When a statute undertakes to set out the duties owing by a traveler of the road, such statutory requirments fulfill the full measure of duty; the exclusive test for determining what the duty is. Valley Film Service v. Cruz, 173 S.W.2d 952, error

refused; Larson v. Halliburton Oil Well Cementing Co., Tex.Civ.App., 105 S.W.2d 368. The statute, supra, lays down the rule for one to keep a lookout for the movement or operation of other vehicles and to give plainly visible or audible signals, only before he turns, stops, or changes his course of travel, or as when evidencing his intention so to turn, stop or change his course. There is no duty in law or in equity for one traveling down a public highway, sitting to the right of and beside the operator of his automobile, out of all focalized mirror vision to the rear, to crane his neck from his automobile door, when there is no movement or operation of his automobile or of any one following him that he should reasonably anticipate that an automobile from the rear would collide with him. It is more reasonable to assume that one so situated as appellant was would expect, as the law directs (Sec. B, Art. 801, Penal Code), that the operator of the oncoming automobile, proceeding in the same direction, when overtaking and about to pass to the left, would give suitable and audible signals (which was not done in this case) of his intention to pass, thus enabling the operator of the front car to give way to the right in favor of the overtaking automobile. He could well assume, without being guilty of negligence, that the operator of the oncoming automobile would obey the Law of the Road. It is an elemental rule that, in the absence of duty, there can be no negligence in failure to do that which would not reasonably be expected or required to be done.

In this case, the trial court having submitted all controlling issues on contributory negligence that could have been found under the evidence to be a proximate cause of the collision, there was no error in refusing to submit defendant's requested Issue Two, quoted fully in the majority opinion. Appellee and the soldier driver were each acquitted of all acts of contributory negligence by the jury findings; that the soldier driver kept a proper lookout for vehicles on the highway; that the automobile was not stopped just prior to the collision; that the automobile tail-lights exhibited a red light plainly visible for a distance of 500 feet to the rear; that just prior to the col-

lision the soldier driver was operating the car at a rate of speed about 15 miles per hour and that appellee's car was not parked on the highway. It will be observed that there was no issue submitted and none requested, and no evidence that at the time of the collision the operator of appellee's automobile was turning, stopping or changing his course, as would justify lookout, either by the operator or appellee, for approaching vehicles from the rear. It seems that the trial court was more liberal to appellant in submitting the issue of the soldier driver's failure to keep a proper lookout *for vehicles on the highway,* than the facts justify. Where did appellee's or the soldier's duty lie in keeping lookout for vehicles on the highway at and immediately before the collision, with an approaching automobile with bright lights facing them? If it was to the rear, the burden then was upon the defendant to show the necessity, and submit issues of such failure. It will be seen that the issue with reference to the soldier's lookout was directed generally to "vehicles on the highway," and not as affects those coming to the rear; and the issue refused by the trial court is of like import, limited generally to "failure to keep a proper lookout for his own safety." In the light of this record, it may well be assumed that appellee and the soldier driver were keeping a lookout to the front; and if any negligence was attributable to them for failure to keep a lookout to the rear, in the absence of submitted issues in reference thereto, such were waived, hence the judgment of the court on that issue must be sustained. However, the jury settled the question, finding that the driver did not fail to keep a proper lookout, that the automobile was moving about 15 miles per hour and was not stopped on the highway. Then, in due justice to this record, how could it be said that appellee, who was sitting beside the driver, out of line of rear vision, was duty bound to keep a lookout; or that he should have turned around in his seat and craned his head out the window? The uncontroverted evidence, and the findings of the jury, answer the question. Appellant's oil truck was being operated with lights that were rather dim; the driver attributing the collision to the fact that, coming up over the top of a grade, after being temporarily blinded by the bright lights of an approaching car, he was confronted with plaintiff's automobile, which had either stopped or was going at about one or two miles an hour on the right-hand side of the highway, evidencing that the accident happened a few seconds after the truck topped the grade or on level stretch of the road a short distance beyond the crest of a long upgrade. The defendant's driver, Burt, further testified:

"Q. How far could you see an object with those lights on your truck? A. Well, if there had been no interference—

"Q. Under ordinary conditions, how far could you see? A. I would say between 150 and 200 feet, * * *

"Q. Mr. Burt, when did you first notice the lights of this approaching car that you say blinded you? A. Just a glare in the sky. Coming up that hill, I could see the glare of the lights as it moved on the pavement.

"Q. How far was that before you got to where they actually came in your face? A. Well, we met right on the eve of the hill just as we came up on the hill, we met * * *

"Q. Did the accident occur as you were going up the hill or after you got across? A. Just as I got to the top of the hill, a high level road, it occurred * * *

"Q. About how far were you when you first saw the vehicle you afterward came in contact with? A. 30 or 40 or 50 feet."

Appellant's driver further testified: "I made my lefthand turn to miss it and if it had been moving at a rate of speed as much as five (5) miles per hour, I would have missed it."

Under the above related facts it is highly probable that had appellee been looking to the rear, he could have seen the dim lights of the truck as it was coming up the hill, but certainly such would not have suggested to any reasonable person danger of its collision. If appellee's car was either stopped or being driven at one or two miles per hour, without a burning tail-light, as contended by the appellant, not found by the jury, still the collision coming on so sudden and unexpected, in so short a space of time,

appellee's failure to keep a proper lookout, if supported by evidence, would not in the least have been a contributing cause of the collision. The trial court having submitted these questions to the jury, the answers were decisive of all question of blame or proximate cause in so far as appellee and his driver were concerned. Northeast Texas Motor Lines v. Hodges, 138 Tex. 280, 158 S.W.2d 487; Blaugrund v. Gish, Tex. Civ.App., 179 S.W.2d 257, Id., 142 Tex. 379, 179 S.W.2d 266.

In Le Sage v. Smith, Tex.Civ.App., 145 S.W.2d 308, the court laid down the correct rule of law directory to duty of an occupant of a leading vehicle to those traveling in the same direction. I quote:

"We have said, in our opinion, that we know of no rule of law that would require either Mr. Smith or Mrs. Smith to keep a proper lookout for vehicles approaching from the rear. Our idea of a proper lookout incumbent upon the operators of motor vehicles upon highways, is one that concerns vehicles in front of the party to be held to such rule, and not those approaching from behind, unless there appears some particular fact that calls the attention of the driver of the front car to the car that follows, which would impose some duty upon the driver of the front car to maintain such a lookout, or unless the driver of such car either slows down his vehicle or intends to stop the same, under which circumstances, or either of them, it would be the driver's duty to keep a proper lookout for vehicles following such car and to then give a proper signal to apprise the driver of the car in the rear of such intention."

The same rule is stated in 5 American Jurisprudence, Section 280, page 656, as follows:

"The driver of the front car owes no duty to the rear or trailing car except to use the road in the usual way, in keeping with the laws of the road, and until he has been made aware of it, by signal or otherwise, he has a right to assume either that there is no other automobile in close proximity to his rear or that, being there, it is under such control as not to interfere with his free use of the road in front of and to the side of him in any lawful manner."

In Valley Film Service v. Cruz, 173 S.W.2d 952, 953, Error refused, the Court of Civil Appeals applied the rule as follows:

"The trial court likewise did not err in refusing to submit to the jury the issues of whether or not the plaintiff failed to keep a proper lookout for motor vehicles approaching him from the rear. Appellee had a legal right to drive his wagon in the right-hand lane of the highway, as the undisputed evidence shows he was doing, and to assume that cars approaching from his rear would obey the law and use proper care to avoid injuring him. It is only in the event that he wishes to stop or change his course that he is required to signal to those approaching from the rear and to see to it that such stopping or changing of course may be done in safety."

Applying the foregoing rule to the facts of the present case, the duty of appellee to keep a lookout to the rear, could arise only in the event that he was in the act of stopping or that he was proceeding along the highway without a tail-light, as required by the Law of the Road, supra. These two conditions should appear before there could be any duty on appellee to abandon his lookout to the front for the approaching automobile, and look to the rear for the oncoming automobile. Manifestly, appellee should not have abandoned his duty to the one approaching, for that to the rear.

The facts and circumstances in this case do not justify a reversal of the judgment. A fair trial was accorded to all parties, and if, perchance, error was made in refusing the special issue of appellee's lookout, same was harmless. Appellee's motion for rehearing should be granted, and judgment of the trial court affirmed.