### WESTERN COTTON OIL CO. v. MAYES et al.

#### No. 2895.

Court of Civil Appeals of Texas. Eastland.

Oct. 12, 1951.

Rehearing Granted Dec. 14, 1951.

Further Rehearing Denied Jan. 18, 1952.

James Little, Big Spring, for appellant.

Thomas & Thomas and Coffee, Coffee & Gilliland, all of Big Spring, for appellees.

GRISSOM, Chief Justice.

Glenn Mayes sued Western Cotton Oil Company, West Texas Division, a corporation, and Willie Walker for damages caused by an automobile collision. Mayes alleged he was driving south on Highway 87, toward Big Spring, behind a truck of Western Cotton Oil Company, West Texas Division, hereinafter referred to as Western; that as Western's truck approached the top of a rise in the highway it turned east across the center stripe to its left side of the highway, whereupon Walker, who was driving a pick-up truck north, collided with the right front of Western's truck and glanced down the side of Western's truck into the front of Mayes' automobile, causing the damages sued for; that Western was guilty of negligence because its agent (a) failed to keep a proper lookout for the automobile of Mayes and the automobiles approaching him on the highway; (b) turned Western's truck to its left side of the highway in front of Mayes' automobile; (c) failed to give plainly visible and audible signal of his intention to so turn; (d) failed to keep the truck under proper control and (e) that Western's employee was guilty of negligence per se in operating the truck in violation of the law of the road in several particulars. Each of said acts was alleged to be a proximate cause of the collision.

Western answered Mayes' petition by alleging, among other things, that Western's employee was driving its truck south on a two-lane highway, approximately 20 feet

wide, on his right-hand side as he approached Walker's pick-up going north; that Walker was driving on his left side of the highway and if Western's truck had continued on its right-hand side it would have collided head-on with Walker's pick-up; that the driver of Western's truck swerved to his left, causing a portion of Western's truck to be on its left side of the highway, in an attempt to avoid the collision but it collided with Walker's pick-up, which glanced along the side of Western's truck and into Mayes' automobile, which was following Western's truck.

Western alleged Mayes' damages were caused solely by the negligence of Walker (a) in driving on his left side of the highway; (b) in failing to give Faircloth, the driver of Western's truck, half of the main traveled portion of the highway, in violation of the penal statutes; (c) that at and just before the collision, Walker was driving and operating his truck upon said public highway "while he was intoxicated and while he was under the influence of intoxicating liquor," in violation of the penal statutes, which constituted negligence per se; (d) that Walker turned to his left without giving an appropriate signal of his intention to do so; that Walker (e) failed to keep a proper lookout; (f) failed to have his truck under control, and (g) was driving his pick-up when his faculties were impaired by the recent drinking of alcoholic beverages. Western alleged that each of the foregoing acts and omissions constituted negligence on the part of Walker and was the sole proximate cause of the collision.

Western further alleged that if it was mistaken in the allegation that Walker's negligence was the sole cause of the collision, that Mayes was guilty of negligence which was a proximate cause thereof because Mayes (a) was following too closely behind Western's truck; (b) failed to have his automobile under control; (c) was driving at an excessive and dangerous rate of speed and (d) failed to keep a proper lookout for Walker's automobile.

Walker answered that the damage to Mayes was not caused by him but was caused solely by the negligence of Western.

Walker sued Western for damages. Walker alleged he was driving north, meeting Western's truck, when said truck was turned suddenly and without warning across the highway to its left in the path of Walker's pick-up causing Walker's pick-up to collide with Western's truck and glance off against Mayes' automobile; that Walker's damage was a proximate result of Western's negligence because its employee (a) drove its truck on his left side of the highway; (b) turned its truck suddenly across the highway in front of Walker's pick-up; (c) failed to yield half of the main traveled portion of the highway; (d) failed to keep a proper lookout and (e) failed to keep control of its truck.

The jury found (1) that the driver of Western's truck turned it to his left across the middle of the center of the paved highway; (2) that this was negligence and (3) a proximate cause of Western's and Walker's vehicles colliding and (4) a proximate cause of the collision of Walker's and Mayes' vehicles; (5) that Mayes' automobile had been damaged in the sum of $852.92; (6) that Walker's pick-up was of the value of $750.00 before and (7) $50.00 after the collision. The jury found that Walker's hospital and doctor bills amounted to $258.35 and that $11,380.00 would compensate Walker for his personal injuries.

The jury further found that just before the collision Walker (12) did not fail to keep a proper lookout; (13) did not fail to keep proper control of his pick-up; (16) did not drive on his left side of the highway, and (20) that just before Western's truck started to turn across the center of the highway Walker was not proceeding across the center of the highway towards Western's truck. The court entered judgment on the verdict for Walker and Mayes against Western. Western has appealed.

Appellant's seventh point is that the court erred in admitting the testimony of Walker that he was familiar with the market value of his pick-up prior to the collision, that it was then worth $750.00, and that after the collision it was practically worthless. Such testimony was admitted over appellant's objection that the proper predicate had not been laid because it was

not shown that Walker was a dealer in automobiles or was familiar with the market. Walker testified that he had owned the 1942 Chevrolet pick-up that was involved in the collision for three or four months prior to the collision. He was then asked:

"Q. Are you familiar with the fair market value of that pick-up? A. Immediately prior to the time of the collision?

Whereupon appellant objected because "the proper predicate has not been laid and it is not shown that he is a dealer in automobiles or familiar with the market."

Whereupon Walker's counsel argued that a man owning a car was familiar with it and qualified to state its "price," without a predicate being laid. The objection was overruled, whereupon the following occurred:

"Q. Mr. Walker, were you familiar with the fair market value of that pick-up immediately prior to that collision? A. I would say it was worth seven and a half.

"Q. You think $750.00 would be the fair market value of it? A. I think so.

"Q. What was the car worth immediately after the collision? A. Just what it would weigh out for scrap iron.

"Q. Was there anything of value to the automobile? A. No, sir, nothing that I could see."

 It was not essential that the witness be a dealer in automobiles. If he had testified that he knew the market value of the pick-up immediately before and after the collision he would have shown prima facie that he was qualified to testify as to its value at said times. It is evident from the foregoing quotation that such was the effect of his testimony. We conclude that reversible error is not shown. Texas Pacific Coal & Oil Co. v. Taylor, Tex.Civ.App., 47 S.W.2d 1110, 1111; North East Texas Motor Lines, Inc., v. Hodges, Tex.Civ.App., 141 S.W.2d 386, 389, affirmed, 138 Tex. 280, 158 S.W.2d 487; City of Wichita Falls v. Mauldin, Tex.Civ.App., 23 S.W.2d 771, 774, affirmed Tex.Com.App., 39 S.W.2d 859; Fort Worth & D. S. P. Ry. Co. v. Judd, Tex.Civ.App., 4 S.W.2d 1032, 1036.

Appellant's eighth, ninth, tenth and eleventh points present the contention that the court erred in failing to submit its requested issues inquiring whether Walker, at the time of the collision, was driving (1) "while he was intoxicated and while he was under the influence of intoxicating liquor" and whether such action was a proximate cause of the collision between (a) Walker's and Western's vehicles and (b) Walker's and Mayes' vehicles; (2) whether Walker was operating his pick-up when his faculties were impaired from the recent drinking of alcoholic beverages and whether (a) this was negligence and (b) a proximate cause of Walker's collision with (c) Western's and (d) Mayes' vehicles.

There was evidence from which the jury could have concluded that Walker was under the influence of intoxicating liquor at the time of the collision. Western's witness testified to the effect that as Western's and Walker's vehicles met near the crest of a slight hill the driver of Western's truck drove to his left across the center of the paved highway because Walker was driving on his left side of the highway and Western's driver pulled to his left in an attempt to avoid colliding with Walker's pick-up. Walker contended he was driving on his right side of the highway and Western's truck cut to its left and ran into him, causing Walker's pick-up to glance down the side of Western's truck and into Mayes' automobile. Why Western's driver turned to his left was the essence of the main question in dispute. As shown by the preceding reference to the pleadings, Walker and Western were each contending the other was guilty of negligence which was a proximate cause of the collision in driving on his left side of the highway and in failing to keep a proper lookout, failing to keep his vehicle under control, and the like. We have concluded that said issues relative to Walker's condition, requested by Western and refused by the Court, did not constitute ultimate issues of fact and the Court did not err in failing to submit them.

In the recent case of Benoit v. Wilson, 239 S.W.2d 792, 798, our Supreme Court, in an opinion by Judge Smith, held that evidence of intoxication is merely proof of an evidentiary fact to be considered in determining whether a person is guilty of

some act or omission which might constitute negligence and a proximate cause of his injury. There, issues were submitted inquiring whether deceased was intoxicated and whether such condition constituted negligence and a proximate cause of the explosion that caused Wilson's death. There was also an issue inquiring whether or not Wilson disconnected the hose from the gas jet. The court held the jury had a right to consider evidence of Wilson's intoxication in determining whether or not he disconnected the hose from the wall; that evidence of intoxication constituted proof of an evidentiary fact to be considered by the jury in determining whether or not he was guilty of some act of negligence, but that proof of intoxication alone did not convict deceased of negligence. The court said: "We fail to find in this evidence a single act or omission on his part which contributed, or could have contributed, to the explosion resulting in his untimely death. Evidence of intoxication, standing alone, does not establish negligence or proximate cause. *There must be evidence* of other misconduct sufficient to establish, by a preponderance of the evidence, *that the person was guilty of performing some act, or failing to perform some act,* which an ordinarily prudent person would have performed. Houston & T. C. Ry. Co. v. Reason, 61 Tex. 613; 38 Am. Jur., p. 883, par. 203." (Italics ours.)

The question as to deceased's intoxication and whether such intoxication was negligence and a proximate cause of his injury were submitted to the jury as ultimate fact issues. The jury's answers thereto constituted the basis for the judgment. Our Supreme Court held such issues were not ultimate issues and that the cause was submitted on an erroneous theory.

In support of said conclusions, the court cited, among others, St. Louis, S. F. & T. Ry. Co. v. Morgan, Tex.Civ.App., 220 S.W. 281, 282, and Scott v. Gardner, 137 Tex. 628, 156 S.W.2d 513, 518, 141 A.L.R. 50. The contention was made in the Morgan case that the finding that the plaintiff was not intoxicated at the time of the accident was without evidence to sustain it. The court said that if the evidence had conclusively shown that plaintiff was intoxicated it would not reverse the judgment because " * * * the fact, if it was a fact, that deceased was under the influence of intoxicants, would not as a matter of law have operated to deprive defendants in error of a right to recover damages for his death as they did. That he was under the influence of intoxicants would be a fact the jury had a right to take into consideration in determining whether he was guilty of contributory negligence or not, but it would not of itsef convict deceased of such negligence."

Scott v. Gardner, supra, was a suit for damages under the guest statute, Art. 6701b, Vernon's Ann.Civ.St., wherein Gardner charged Scott acted with heedless and reckless disregard of and conscious indifference to the rights of his automobile guests. Scott defended primarily on the theory that, being drunk, he could not be guilty of "conscious" indifference to their rights. The Supreme Court, in an opinion by Judge Smedley, answered the question whether it was necessary that the matter of Scott's intoxication be submitted to the jury, together with the question of whether he was in such mental state that his actions evidenced a conscious indifference to the rights of the plaintiff, as follows: "The question of appellant's intoxication was not an utimate fact issue and it was not necessary that it be submitted to the jury as an issue. The trial court's action in not so submitting it was correct. Appellant's intoxication was a fact to be considered by the jury, together with other circumstances, in answering the third special issue in the trial court's charge, which in our opinion sufficiently and correctly submitted the question as to appellant's heedless and reckless disregard, or conscious indifference." See also L.R.A.1917–A, 313; Hicks v. Frost, Tex.Civ.App., 195 S.W.2d 606, 611, Ref. NRE; Langham v. Talbott, Tex.Civ. App., 211 S.W.2d 987, 991, Ref. NRE; Houston & T. C. Ry. Co. v. Reason, 61 Tex. 613; Tripp v. Watson, Tex.Civ.App., 235 S.W.2d 677, 680, Ref. NRE; East Texas Motor Freight Lines v. Loftis, 148 Tex. 242, 223 S.W.2d 613, 616.

Appellant contends said requested issues were ultimate issues of fact. In support of this contention it cites Peveto v. Smith, 134 Tex. 308, 133 S.W.2d 572, where such issues apparently constituted the basis for the judgment. It does not appear that the contention was made in that case that the ultimate fact issues were whether what the defendant did, or failed to do, while drunk, constituted a negligence act, or omission, which was a proximate cause of plaintiff's injury. It appears to have been contended only that there was no evidence that Peveto's driving while intoxicated was a proximate cause of deceased's injuries. Regardless of whether the Peveto case should be distinguished, we think we should follow the latest decision of our Supreme Court, Benoit v. Wilson, supra, which we think is clearly correct.

The deposition of Highway Patrolman Taylor was taken by Walker. Walker elicited in said deposition evidence that the driver of Western's truck told the patrolman after the accident that Walker was on Western's side of the road as Walker came over a rise and that Western's driver swerved to his left in an attempt to avoid hitting Walker. Appellant contends the court erred in refusing to admit such testimony. Appellant also complains of the refusal to admit that part of the deposition to the effect that, shortly after the accident, the patrolman asked Western's driver how the accident happened and said driver told him Walker was on Western's side of the road and Western's driver decided the best way to avoid Walker was to cut back to his left and that he did so in an attempt to miss Walker's pick-up. Appellant also complains of the refusal to admit, without limitation, the testimony by deposition of said patrolman, elicited by Walker, to the effect that, shortly after the accident, the patrolman had a conversation with Mayes; that Mayes said Western's truck "all at once just went off to its left hand side of the road." The testimony as to what Mayes said was admitted for impeachment purposes only.

■ We think it is immaterial on the question of the admissibility of evidence as to who elicited the testimony in a deposi-

tion. The answer of a witness to an interrogatory becomes the evidence of the party offering it, regardless of who elicited the statement contained in the deposition. Texas & P. Ry. Co. v. Gay, 88 Tex. 111, 30 S. W. 543, 545; Schallert v. Boggs, Tex.Civ. App., 204 S.W. 1061, 1062; Willson v. Kuhn, Tex.Civ.App., 96 S.W.2d 128, 134.

■■ Faircloth, the driver of Western's truck, did not testify. His statements to the patrolman after the accident were not shown to be res gestae. They were hearsay and incompetent. The testimony as to the statement made by Mayes, a party to the suit, to the patrolman which conflicted with his testimony, was admissible against Mayes for the purpose of impeachment only. Tripp v. Watson, Tex.Civ.App., 235 S.W.2d 677, 681, Ref. NRE. Said points are overruled.

Issue 9 was "What amount of money, if any, do you find from the preponderance of the evidence, if now paid in cash, would reasonably compensate Willie Walker for personal injuries which he sustained, if any, as a direct result of the collision in question?" In connection with said issue the court gave the following instruction: "In connection with the last foregoing issue in determining the amount to be given in answer thereto, if any, you may take into consideration the pain, worry and mental anxiety, if any, suffered by Willie Walker in the past, as a direct result of said collision and the injuries sustained therein and the pain, worry and mental anxiety, if any, which the said Willie Walker will reasonably and probably suffer in the future, if any, as a direct result of injuries sustained in said collision; and further you may consider the loss of earning ability, if any, which the said Willie Walker has sustained in the past as a direct result of injuries received in such collision; and the loss of earning capacity, if any, which the said Willie Walker will probably and reasonably sustain in the future as a direct result of injuries received by him in the collision in question."

Appellant made several objections to said issue but the one deemed worthy of discussion is number (e), wherein appellant

asserted the evidence conclusively showed Walker had disabilities, physical pain and mental anxiety arising from other causes than the injuries resulting from the collision; that the record conclusively showed Walker had trouble with his chest and teeth and migraine headaches "back in 1948 prior to the accident." Wherefore, appellant requested the court to add to said instructions the following: "But you will not consider any disability or loss of earning ability, if any, or any pain, if any, worry and mental anxiety, if any, which the said Willie Walker had from diseases, or any cause other than the injuries which he received in the collision in question, in arriving at your answer to this issue."

The court refused to give the requested instruction and such refusal is assigned as error. Appellant contends the evidence shows Walker had diseases and disability not connected with the injuries received in the collision. He calls attention to evidence that Walker was given a certificate of disability when he was discharged from the army, such disability being occasioned by a nervous or ulcerated stomach, and that he was paid a ten percent disability benefit until the first of 1948; that in 1948 he had migraine headaches, was examined at a Veteran's Hospital and had his back x-rayed; that he had his teeth pulled after the accident and testified that his teeth were "not too good" before the accident but that five had been loosened by the accident; that a doctor testified some cloudiness in his lungs was shown in the x-rays made of his chest and that Walker lost his teeth because of pyorrhea. In support of appellant's contention that the judgment should be reversed because the court refused the requested additional instruction not to consider any condition not caused by injuries received in the collision, it cites Dallas Ry. & Terminal Co. v. Ector, 131 Tex. 505, 116 S.W.2d 683.

The collision occurred August 5, 1949. The trial was had in December, 1950. With reference to his teeth, Walker testified, on cross-examination by appellant, that he started having his teeth pulled in January, 1950; that they had all been pulled at the time of the trial; that he had five pulled the first time, waited a while and had more pulled; that he wasn't having any pain that caused him to have his teeth pulled; that he got five of his upper and five of his lower teeth broken loose in the wreck and they never did tighten up and stayed sore; that he had them x-rayed and was advised to have them extracted. Appellant's counsel asked Walker if he claimed he had his teeth pulled as a result of the accident, to which Walker replied:

"A. I wouldn't say it was altogether the result of this accident. They were not too good but they were loose. (It is evident the witness meant his teeth were not loose before the accident).

"Q. Your teeth were kind of in bad shape before the accident? A. Some of them in the front had cavities in them and I don't think I had cavities in the rest of them."

The evidence with reference to Walker having his back x-rayed shows that he had a final examination in 1948 at the Veterans Hospital at Amarillo; that as a result of this examination his pay for ten percent disability was stopped, evidently, because it was concluded that he no longer suffered any disability. At least, it is conclusively shown that in 1948 the Veterans Administration gave Walker a complete physical examination and terminated payment of disability benefits. Dr. Sanders testified that Walker first came to see him about July 5, 1950; that his principal complaint was that he was tired, had no energy; that most of his difficulty was from his waist down; that he examined him and made x-ray pictures; that there was some cloudiness in his lungs; that Walker said he had been smoking two packages of cigarettes daily and the doctor advised him to smoke less. With reference to the cloudiness in the lungs, the doctor testified:

"A. That can be caused by various things such as excessive smoking, excessive inhaling dust, dirt and frequent cold.

"Appellant's Counsel: As I understand it, that trouble is not claimed to result from this accident.

"Walker's Counsel: No, sir.

"Appellant's Counsel: It is not claimed as a result of this accident?

"Walker's Counsel: No, sir, he had that before and after and we are not claiming that."

We call attention to the fact that issue 9 inquired what amount would compensate Walker for injuries sustained *"as a direct result of the collision."* This statement is repeated in connection with every matter that the court instructed the jury they might consider in determining said amount. In addition to such statement in the issue it is repeated four times in the instruction. It should have been clear to the jury that they could consider only those conditions which resulted directly from the collision.

■ We have studied the record with reference to each of the matters referred to by appellant as necessitating the additional instruction requested by it and have concluded that Walker's infirmities prior to the collision were insufficient to require the court to give such additional instruction. We think the evidence is insufficient to show a causal connection between Walker's prior infirmities and any pain or disability suffered after the accident to be so confusingly and closely intermingled that a jury might be misled into awarding damages for any infirmity that existed prior to the collision. Dallas Ry. & Terminal Co. v. Orr., 147 Tex. 383, 215 S.W.2d 862, 864. We conclude that the test prescribed in the Orr case for application of the rule stated in the Ector case shows the Ector case is not applicable here.

■ Appellant's thirteenth point is that the court erred in refusing to set aside the verdict because the jury arrived at the amount of damages awarded to Walker by lot and chance; that the jury fixed the amount of damages by taking the sum each juror wanted to award, adding them and dividing the total by twelve, thereby awarding such quotient as damages. Although the amount of damages awarded was the same as the amount thus arrived at, nevertheless, there was evidence from which the trial court could have found, and, presumably, did find, that the jury did not

agree in advance that the sum thus arrived at would constitute their verdict, but, on the contrary, agreed to go through such process for the purpose of arriving at a starting point in their discussions as to the amount to be awarded and, thereafter, concluded that such amount was a proper sum to be awarded. In other words, the trial judge presumably found the alleged misconduct did not occur. There being evidence to support such finding, the decision of the trial court is final. The testimony of a juror that he felt bound by the agreement, if there was no agreement to be bound, was merely testimony as to the mental process by which he arrived at his verdict and not admissible. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462, 464; Sproles Motor Freight Lines, Inc. v. Long, 140 Tex. 494, 168 S.W.2d 642, 644; Maryland Casualty Co. v. Gideon, Tex.Civ.App., 213 S.W.2d 848, 851; Watson v. Texas Indemnity Ins. Co., 147 Tex. 40, 210 S.W.2d 989, 992.

The judgment is affirmed.

## On Motion for Rehearing

■ Appellant has filed an able motion for rehearing in which it contends we erred in holding that the trial court properly refused to submit issues inquiring whether Walker drove an automobile on a public highway while intoxicated and whether such act was a proximate cause of the collision and, further, that we erred in holding that the court properly refused appellant's requested additional instructions in connection with issue 9, to the effect that in awarding damages the jury could not consider any pain or disability caused by a pre-existing disease or infirmity, or by anything other than the injuries received in the collision. After careful consideration, we have concluded that we erred in such holdings.

The decision in Benoit v. Wilson, Tex. Sup., 239 S.W.2d 792 does not authorize a holding that driving an automobile on a public highway while intoxicated cannot be a proximate cause of a collision. Said issue should have been submitted to the jury. Peveto v. Smith, 134 Tex. 308, 133 S.W.2d 572. See also 60 C.J.S., Motor Vehicles, §

265, page 646; Norman v. Virginia-Pocahontas Coal Co., 68 W.Va. 405, 69 S.E. 857, 858, 31 L.R.A., N.S., 504; Spratling v. Butler, Tex.Sup., 240 S.W.2d 1016, 1017; Foster v. Beckman, Tex.Civ.App., 85 S.W.2d 789, 792, writ ref.

On another trial, if the evidence as to prior infirmities and disease is the same, the court should instruct the jury as to the exclusion of improper elements of recovery in accord with the decision in Dallas Ry. & Terminal Co. v. Ector, 131 Tex. 505, 116 S.W.2d 683, 686.

The motion for rehearing is granted. The judgment is reversed and the cause remanded.